106 A.3d 1286

LACEY GROH, PLAINTIFF, v. RACHEL GROH, DEFENDANT.

Superior Court of New Jersey
Chancery Division Ocean County Family Part

Decided March 12, 2014.

*John J. Rizzo* for plaintiff (*Geldhauser, Shiffman and Rizzo,* attorneys).

*Marianna C. Pontoriero* for defendant (*Pontoriero & Pontoriero,* attorneys).

L.R. JONES, J.S.C.

This case presents a legal issue regarding same-sex rights and statutory interpretation of *N.J.S.A.* 2A:34–2.1, which sets forth a

list of statutory grounds for dissolution of a civil union. Absent from this list is the no-fault ground of irreconcilable differences. Notwithstanding same, and for the reasons set forth in this opinion, the court holds that same-sex couples can legally dissolve their civil unions based upon irreconcilable differences.

## FACTUAL HISTORY

In 2008, plaintiff and defendant entered into a civil union. Five years later, plaintiff filed a complaint and defendant filed a counterclaim, each seeking a judgment dissolving the union on the no-fault ground of irreconcilable differences. The parties, who were each represented by experienced matrimonial counsel, amicably resolved all of their other pending issues by entering into a detailed written settlement agreement. On March 12, 2014, the parties and their attorneys appeared before the court, jointly seeking to conclude the proceedings via dual judgment of dissolution. *N.J.S.A.* 2A:34–2.1, however, does not explicitly include irreconcilable differences as an applicable legal ground for dissolution of a civil union.

## LEGAL ANALYSIS

On October 25, 2006, the New Jersey Supreme Court held in *Lewis v. Harris,* 188 *N.J.* 415, 423, 908 *A.*2d 196 (2006), that "unequal dispensation of rights and benefits to committed same-sex partners can no longer be tolerated under our State Constitution," and that same-sex couples in committed relationships should have rights, benefits and responsibilities similar to those enjoyed by married heterosexual couples. The court further held that the Legislature should, within six months, enact legislation supporting and guaranteeing such rights. *Id.* at 463, 908 *A.*2d 196.

Two months later, on December 21, 2006, in direct response to *Lewis,* the Legislature enacted the New Jersey Civil Union Act, (the "Act"), *N.J.S.A.* 37:1–28 to –36, which then-Governor Jon Corzine signed into law. While the state did not at that time legalize same-sex marriages, the Act formally established the right

of same-sex couples to enter into civil unions, a legislatively created domestic status, which provided certain new statutory rights to same-sex couples, short of the right to formally marry each other. Significantly, while the Act was signed on December 21, 2006, it did not take effect immediately, but rather on "the 60th day after the enactment," i.e., February 19, 2007, so that the Commissioner of Health and Senior Services and the Director of the Administrative Office of the Courts had the opportunity to "take such anticipatory administrative action in advance as shall be necessary for the implementation of the Act."

The Act created statutory authority for the forming of a civil union between same-sex partners. At the same time, the Legislature enacted *N.J.S.A.* 2A:34–2.1, which provided for legal dissolution of such union. Specifically, *N.J.S.A.* 2A:34–2.1(a)–(g) authorized the family courts of this state to judicially dissolve a civil union for any of the following enumerated reasons:

a. voluntary sexual intercourse between a person who is in a civil union and an individual other than the person's partner in a civil union couple;

b. willful and continued desertion for a period of 12 or more consecutive months;

c. extreme cruelty;

d. separation for a period of at least 18 or more consecutive months with no reasonable prospect of reconciliation;

e. voluntarily induced addiction or habituation to any narcotic drug, or habitual drunkenness for a period of 12 or more consecutive months;

f. institutionalization for mental illness for a period of 24 or more consecutive months;

g. imprisonment of the defendant for 18 or more consecutive months.

Notably, the list did not expressly include a separate cause of action for dissolution of a civil union based upon the no-fault

ground of irreconcilable differences. This absence was not legally surprising at the time, because as of December 21, 2006, "irreconcilable differences" did not yet exist in New Jersey as a recognized legal basis for divorce between heterosexual, married couples. Put another way, as of December 21, 2006, nobody in the state was legally allowed to terminate either a civil union or a marriage based upon irreconcilable differences.

By comparing the multiple statutory causes of action which existed at that time for dissolution of a marriage under *N.J.S.A.* 2A:34–2, and dissolution of a civil union under *N.J.S.A.* 2A:34–2.1, one sees that the two lists were essentially mirror images of each other. The only notable semantic difference was that in the divorce statute, there was a cause of action under *N.J.S.A.* 2A:34–2(a) for "adultery," as opposed to *N.J.S.A.* 2A:34–2.1(a)'s cause of action for "voluntary sexual intercourse between a person who is in a civil union and an individual other than the person's partner in a civil union couple." This distinction in language was purely form over substance, in that the legal definition of adultery required an extra*marital* sexual relationship. Since a civil union was technically not a "marriage," the exact wording and historical definition of the word "adultery" did not perfectly fit into the context of a non-marital civil union. Accordingly, the Legislature simply utilized words other than "adultery" to reach the same substantive result, i.e., that a party could seek to end either a marriage or a civil union when during such relationship, their partner had a sexual affair with a third person.

Based upon the near-identical nature of the respective causes of action for divorce and dissolution of civil union, it is self-evident that as of December 20, 2006, the Legislature's intent was to create a symmetry between the recognized causes of action for divorce and dissolution of a civil union, in a manner consistent with the terms and constitutional spirit of *Lewis v. Harris, supra,* 188 *N.J.* at 423, 908 *A.*2d 196. Against this backdrop, it is logical to conclude that had married couples in New Jersey been legally allowed at that time to dissolve their marriages based upon the no-

fault ground of irreconcilable differences, a similar right and cause of action would have been included in *N.J.S.A.* 2A:34–2.1, expressly providing an equal right for same-sex couples to seek no-fault dissolution on such grounds. This conclusion is particularly compelling since *N.J.S.A.* 37:1–33 of the Act states that whenever any law makes reference to "marriage", "same shall include a civil union pursuant to the provisions of this act."

Between the December 21, 2006, enactment of the civil union statute and its effective date of February 19, 2007, another major legislative development occurred with significant impact upon New Jersey family law practice. On January 20, 2007, the Governor signed into law *P.L.* 2007, *c.* 6. This legislation formally amended the statutory causes of action for divorce under *N.J.S.A.* 2A:34–2, so as to allow married couples to divorce on the no-fault ground of irreconcilable differences. *N.J.S.A.* 2A:34–2(i). The amendment was clearly intended and designed to permit people to end their marriages in a calm and dignified manner without having to engage in hurtful and unproductive mudslinging over who was at fault for the failure of the partnership. The amendment, however, did not expressly amend *N.J.S.A.* 2A:34–2.1(a)–(g), so as to include irreconcilable differences in the list of causes of action for dissolution of a civil union as well.

Given the language in *N.J.S.A.* 37:1–33 which directs that any law which references marriage "shall include a civil union," it is logical to conclude that the language in *N.J.S.A.* 2A:34–2.1 should have also been expressly amended to include irreconcilable differences. From a standpoint of public policy, reason, and common sense, the omission of language specifically amending and updating *N.J.S.A.* 2A:34–2.1, so as to include irreconcilable differences as an explicit cause of action, appears to be nothing more than inadvertent drafter oversight, most likely resulting from the remarkably small gap of time (thirty-one days) between enactment of the two statutes. For certain, there is no language in the legislative history of either act which reflects any specific intent by the Legislature to permit only heterosexual married couples the

ease of ending their marriages on such no-fault grounds, while simultaneously denying this same basic right and convenience to same-sex couples seeking to amicably dissolve their civil unions. Not only is there no public policy or logical basis supporting the exclusion of such right to same sex couples, but the denial of such right would constitute a fundamental breach of constitutional rights and equal protection as enunciated by the Supreme Court in *Lewis, supra,* 188 *N.J.* 415, 908 *A.*2d 196.

As noted by the New Jersey Supreme Court in *Hubbard ex rel. Hubbard v. Reed,* 168 *N.J.* 387, 392–93, 774 *A.*2d 495 (2001), courts strive to construe written statutes, rules and laws in a manner which avoids an absurd or illogical result, even when same appears to be dictated by a literal interpretation of the language. *See also N.J.S.A.* 1:1–1. Further, as aptly observed long ago by Judge Learned Hand, "there is no surer way to misread any document than to read it literally." *Guiseppi v. Walling,* 144 *F.*2d 608, 624 (2d Cir.1944) (concurring opinion). Since there is no reasonable basis to find that the Legislature intended an unequal and unconstitutional result, the logical conclusion is that the omission and failure to amend the language in the four-week old civil union statute at the same time as the divorce statute was purely and simply unintentional.

New Jersey's two other branches of government, the executive branch and judicial branch, have both informally interpreted the "irreconcilable differences" amendment of the divorce statute to at least implicitly apply to dissolution of civil unions as well, even in the absence of express statutory language in *N.J.S.A.* 2A:34–2.1 stating same. First, in signing the "irreconcilable differences" amendment into law, the Governor issued a public signing statement that, "it is my clear understanding that this bill will be applicable to same-gender couples who have entered into a civil union as well as to mixed-gender couples joined in matrimony." *Governor's Signing Statement to S. 1467* (Jan. 20, 2007). Second, shortly after the Governor's statement, the Administrative Office of the Courts ("AOC") forwarded correspondence to the various

assignment judges in each New Jersey county courthouse, advising that based upon the Governor's signing statement and the prior legislative history and purpose of the Act itself, the AOC's interpretation of the new cause of action of irreconcilable differences was that it was applicable not only to divorce, but to dissolution of civil unions as well.

Presently, however, there remains a very practical and real-life problem regarding the specific language of *N.J.S.A.* 2A:34–2.1, which remains in the law books in its original format, with the "irreconcilable difference" language still absent from the list of grounds for dissolving a civil union. In an era when many litigants cannot afford to hire an attorney, and try to represent themselves in a pro se capacity by engaging in self-education at law libraries or through online research, a lay person reading and relying upon the explicit wording of *N.J.S.A.* 2A:34–2.1 may easily reach the erroneous conclusion that one cannot dissolve his or her civil union on the ground of irreconcilable differences. In fact, even seasoned attorneys may reach the same legal conclusion if they rely solely and strictly on the exact language in *N.J.S.A.* 2A:34–2.1 itself. As a result, some litigants who otherwise qualify for no-fault dissolution may mistakenly believe that unless they have already been physically separated for eighteen months, they have to raise distasteful and nasty, fault-based allegations about their partner in order to dissolve the civil union. Such a result would be legally and socially unfortunate and unnecessary.

While the wording in *N.J.S.A.* 2A:34–2.1 may presently be unclear or misleading on the issue of irreconcilable differences, the development of case law interpreting the Act and legislative intent may in the interim help fill the void and provide public guidance on the issue. In this regard, the court notes that the law strongly favors and encourages civility between parties in family court. For this reason, from both a legal and social standpoint, no-fault domestic litigation is usually highly preferable to fault-based domestic litigation. This concept applies to all litigants who come to family court to dissolve a relationship, whether such relationship is

a marriage or a civil union. No-fault resolution potentially saves people time, money, stress, anxiety, and embarrassment in family court. Moreover, no-fault dissolution is far more likely to bring about amicable settlement than litigation where each party has to accuse the other party of wrongful acts and misconduct in order to legally terminate an emotionally dead relationship.

While some family court cases inevitably involve the raising and exploration of certain fault-based issues, litigants who wish to proceed along the more peaceful, no-fault route towards amicable resolution must have a fair opportunity to do so. It is fundamental that settlement of litigation ranks high in the public policy of this state. *Ziegelheim v. Apollo*, 128 *N.J.* 250, 263, 607 *A*.2d 1298 (1992); *Nolan v. Lee Ho*, 120 *N.J.* 465, 472, 577 *A*.2d 143 (1990). This is particularly true in family court matters, as a peaceful means of terminating domestic strife. *See N.H. v. H.H.*, 418 *N.J.Super.* 262, 13 *A*.3d 399 (App.Div.2011). As a matter of public policy, out-of-court resolution of issues is encouraged, and nowhere is this policy more imperative than in the ever-burgeoning field of family law. *See Davidson v. Davidson*, 194 *N.J.Super.* 547, 550, 477 *A*.2d 423 (Ch.Div.1984). A reasonable statutory interpretation of our law, which finds that the Legislature intended to allow rather than disallow no-fault dissolution upon irreconcilable differences, is entirely consistent with this policy and socially worthwhile goal.

As a final point, the court notes that since enactment of the statutes at issue, and as a direct result of the U.S. Supreme Court case of *United States v. Windsor*, 570 *U.S.* ——, 133 *S.Ct.* 2675, 186 *L.Ed.*2d 808 (2013), and the New Jersey case of *Garden State Equality v. Dow*, 434 *N.J.Super.* 163, 82 *A*.3d 336 (Law Div.2013), New Jersey now fully recognizes and authorizes same-sex marriages. As the divorce statute now applies equally to both opposite-sex and same-sex marriages, family courts have clear statutory authority to dissolve same-sex marriages on the grounds of irreconcilable differences. There is no legal logic in statutorily interpreting our laws to permit same-sex couples to amicably

dissolve marriages based on irreconcilable differences, while simultaneously prohibiting same-sex couples in pre-existing civil unions from dissolving their relationships in the same peaceful fashion.

For all of the foregoing reasons, the court concludes that under the most reasonable interpretation of existing statutory law, the family court has authority to dissolve a civil union based upon on the no-fault ground of irreconcilable differences. In the present case, the court hereby grants such relief by entering a dual judgment of dissolution, and wishes both parties well in their respective futures.