NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2006-14T1

STATE OF NEW JERSEY

    Plaintiff-Respondent,

v.

RODNEY ARMOUR,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

July 19, 2016

APPELLATE DIVISION

Argued April 20, 2016 — Decided July 19, 2016

Before Judges Alvarez, Ostrer and Manahan.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 02-12-2454.

Edward C. Bertucio argued the cause for appellant (Hobbie, Corrigan & Bertucio, P.C., attorneys; Mr. Bertucio, of counsel and on the brief; Elyse S. Schindel, on the brief).

Monica Lucinda do Outeiro, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Acting Monmouth County Prosecutor, attorney; Ms. do Outeiro, of counsel and on the brief).

The opinion of the Court was delivered by

MANAHAN, J.A.D.

In this case we address the standard governing a post-conviction request to retest fingerprint evidence based on

advances in fingerprint science and expansions of the New Jersey State Police Automated Fingerprint Identification System (AFIS) and Integrated Automated Fingerprint Identification System (IAFIS) databases. In particular, advances in fingerprint science and expansions to include more offenders in the databases increase the possibility that a fingerprint may match a hitherto unidentified third party.

Defendant Rodney Armour appeals from an order denying a motion for post-conviction discovery sought in conjunction with a motion for a new trial. He argues that the motion judge erred by rejecting his request for retesting of a latent fingerprint taken from the outside of a motor vehicle in which a robbery occurred, and for which defendant was convicted after a jury trial.[1]

We conclude that the statutory standard governing retesting of DNA provides a suitable framework for assessing a request for retesting fingerprints. Applying that framework, the critical factor in this case is whether there would be a "reasonable probability" that defendant would be entitled to a new trial if the fingerprint retesting were favorable, pursuant to N.J.S.A. 2A:84A-32a(d)(5). After reviewing the record evidence, we

---

[1] Defendant also argues that he received ineffective assistance of post-conviction relief (PCR) counsel.

further conclude that even if the latent fingerprint was tested anew and a third party was identified, defendant would not be entitled to a new trial in light of the substantial evidence of guilt and the lack of a proffered alibi. Consequently, we affirm the motion judge's denial of defendant's motion.

I.

Defendant was found guilty by a jury of second-degree robbery, N.J.S.A. 2C:15-1(a). We adopt the essential facts from our decision affirming defendant's conviction:

> The robbery was committed around 9 p.m. on October 15, 2002, in a shopping center in Neptune. The victim drove her car to an ATM in the shopping center to transfer funds into her checking account. As she was beginning this transaction, a man she identified at trial as defendant got into her car and demanded money. When she withdrew only $5 from her wallet, he said "[N]o, that's not enough. Give me all of it." The victim then gave defendant a $20 bill, but he said that if she "didn't give him all [of her] money he was going to shoot [her] in the face." The victim then asked defendant to allow her to complete the deposit into her checking account, and he agreed. After the victim completed this transaction, defendant directed her to drive toward an Eckerd drug store at the south end of the mall. When the victim stopped at the drug store, defendant told her to give him her wallet. The victim responded that she did not know the location of her wallet, which she had dropped during the course of the robbery. When defendant was unable to find the wallet, he kicked the victim in the thigh and punched her in the jaw. After assaulting the victim, defendant got out of

the car and ran behind the Eckerd towards a fence located behind the building.

In addition to the victim's in-court identification of defendant as the robber, the State presented the testimony of an employee of the Eckerd drug store, Beverly Wilson, who walked up to the victim's car while the robbery was in progress and saw the victim struggling with defendant. Wilson, who had seen defendant in the drug store shortly before the robbery, and the victim both gave the police descriptions of the perpetrator shortly after the crime. The State also produced a videotape from an Eckerd surveillance camera which showed that defendant had been in the drug store around the time of the robbery.

The night following the robbery, Wilson, who was working at a McDonald's that night, saw defendant standing in line inside the restaurant. She called the police, who responded to the McDonald's while defendant was still there. Wilson then made a positive identification of defendant as the robber, and the police placed him under arrest.

Defendant did not testify at trial. In his defense, defendant relied primarily on evidence of inconsistencies between the descriptions of the perpetrator's clothing that Wilson and the victim gave the police after the robbery and the clothes that defendant was shown wearing by the Eckerd surveillance camera and at the time of his arrest.

[State v. Armour, No. A-5690-03 (App. Div. Oct. 4, 2005) (slip op. at 1-3) (Armour I)].

We recite additional facts adduced at the trial relevant to our analysis. The victim was employed as a nurse for

approximately twenty-six years. She gave a very specific description of defendant, including minute details of his appearance and mannerisms. Her encounter with defendant lasted for approximately ten minutes. During that time, the victim observed that defendant was "thin and fairly tall. His complexion [was] sort of an ashen gray, a gray pallor. His eyes were sort of sunken and dark circles were around his eyes. He was shaking." She also noted that defendant appeared to be in his early thirties, had a thin mustache, and a "pitted" face indicative of scarring (possibly from acne). The victim was "scared but not overly scared" of defendant because "[h]e seemed pathetic, and shaking." The victim was unable to tell whether defendant was "Hispanic or light-skinned black" because of his gray "pallor."

Wilson described the robber as a light-skinned, tall African-American man in his thirties with a thin build. Both the victim and Wilson testified that defendant was wearing a hooded sweatshirt. However, the victim testified that defendant was wearing a gray sweatshirt, and Wilson testified the sweatshirt was "dark[.]" While working her other job at a McDonald's, Wilson identified defendant to the police as the same man she saw twice the previous day because he was wearing the same clothes. Another Eckerd employee who identified

defendant as the man he spoke to, which was recorded in the video, testified that defendant was wearing "a light black, dark navy blue type of a sweatshirt."

After defendant was arrested, he was interrogated by Neptune Police Sergeant Michael Emmons. Emmons testified at trial that he advised defendant of the reason for the investigation, and that the evidence pointed to defendant as the perpetrator who punched the victim during the robbery. According to Emmons, defendant responded that "he never punched a white woman in her face" despite that Emmons had not revealed the victim's race to defendant.

Neptune Police Detective Kevin Devine, the State's expert in the field of fingerprint examination, testified that a usable latent fingerprint was found on the exterior of the passenger door of the vehicle driven by the victim. The latent fingerprint was sent to AFIS, a database of fingerprints which includes individuals with criminal records, applicants for gun permits, and government employees. No candidate list was returned by State Police — meaning "the source of [the] latent print [was] not in their database." The latent fingerprint was also compared with the fingerprints of defendant, the victim and her boyfriend (who owned the vehicle she was driving). Devine testified that it was determined with 100% probability that the

latent fingerprint was not a match for defendant, the victim or her boyfriend.

## II.

After the guilty verdict, the trial judge "granted the State's motion to sentence defendant to an extended term as a persistent offender and imposed a twenty-year sentence, subject to parole ineligibility for [eighty-five percent] of that term, as required by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2." Armour I, supra, slip op. at 1.

We affirmed the conviction but vacated the sentence and remanded to the trial court for resentencing in conformance with State v. Natale, 184 N.J. 458, 494-96 (2005). Armour I, supra, slip op. at 8-10. On remand, defendant received the same twenty-year sentence subject to NERA. The Supreme Court granted defendant's petition for certification of our decision in Armour I, limited to the issue of the sentence, and the matter was "summarily remanded to the trial court for resentencing in light of the Court's decision in State v. Pierce, 188 N.J. 155 (2006)." State v. Armour, 188 N.J. 259 (2006). Following the second remand, defendant was again sentenced to twenty years subject to NERA.

Defendant subsequently filed a PCR petition alleging ineffective assistance of trial counsel. The now-defunct

"Project Freedom Fund" (PFF) represented him during the PCR proceedings. Following oral argument, the PCR judge denied the petition in an oral opinion. Defendant appealed, contending that both trial counsel and PCR counsel were ineffective. We affirmed the denial in an unpublished opinion substantially for the reasons set forth in the PCR judge's oral opinion. State v. Armour, No. A-0672-08 (App. Div. Dec. 16, 2010) (slip op. at 3-5), certif. denied, 206 N.J. 330 (2011).

### III.

Defendant next filed a motion for a new trial on July 29, 2014, seeking the entry of an order for submission of the unidentified latent fingerprint to AFIS and IAFIS. He argued that the latent fingerprint could belong to a culpable third party. In support of his argument, defendant submitted an affidavit from Michael J. Sweedo, a "forensic consultant in the areas of fingerprint identification, crime scene analysis and blood pattern analysis[.]"[2] Defendant also sought a new trial based upon ineffective assistance of PCR counsel, relying on newly discovered evidence that PFF was a sham organization that

---

[2] Sweedo is a certified latent fingerprint examiner and senior crime scene analyst. In his affidavit, he offered information regarding "significant advances" in AFIS testing as well as AFIS's connection to the IAFIS database.

provided ineffective assistance of counsel and had perpetrated a fraud on the court.[3]

The judge denied the motion in an oral opinion on November 21, 2014. In his decision, the judge concluded "it was not the intention of the Legislature to include fingerprints" in the DNA retesting protocol set forth in N.J.S.A. 2A:84A-32a. He also reasoned that evidence potentially linking "the fingerprint found on the passenger door of the victim's vehicle to another person would not necessarily establish [third-party] guilt. Although the fingerprint was located where the robber entered the vehicle, it is reasonable to assume that there were other people who touched the vehicle in that location." The judge noted the victim's testimony was "clear and consistent[,]" and

---

[3] On August 23, 2011, the Office of the Attorney General filed a complaint naming PFF and its owner and operator, Bruce S. Buccolo (collectively the PFF defendants), as defendants. The complaint averred that the PFF defendants violated the Consumer Fraud Act and Regulations Governing General Advertising Practices, and that they engaged in acts of misrepresentation and misleading advertisements to solicit clients. Specifically, the complaint alleges that the PFF defendants "cynically exploited" inmates and their families by demanding up-front payments and then performing little work (sometimes by the use of non-attorneys or disbarred attorneys) or no work at all. A final judgment by default in the amount of $2.1 million, plus additional fees and costs, was entered against the PFF defendants on October 9, 2012. Defendant's PCR was handled by an attorney, Robert F. Conley, through PFF. On or about October 7, 2013, defendant received correspondence from the Office of the Attorney General identifying defendant as a potential recipient of restitution if any assets were seized pursuant to the judgment.

that the jury "was fully aware that the fingerprint on the car did not belong to defendant, and yet they convicted him [anyway]."  The judge did not address defendant's argument regarding ineffective assistance of counsel.  This appeal followed.

Defendant raises the following arguments on appeal:

POINT I

THE TRIAL COURT IMPROPERLY DENIED [DEFENDANT'S] MOTION REQUESTING AN ORDER FOR THE SUBMISSION OF THE UNIDENTIFIED LATENT FINGERPRINT INTO THE AFIS AND IAFIS SYSTEMS, AND THE APPELLATE DIVISION SHOULD REVERSE THE TRIAL COURT'S DECISION AND ORDER THAT THE PRINT BE SUBMITTED INTO THE AFIS AND [IAFIS] SYSTEMS.

POINT II

THE TRIAL [COURT] IMPROPERLY DENIED [DEFENDANT'S] MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE, AND THE [APPELLATE] DIVISION SHOULD REVERSE THE TRIAL COURT'S DECISION.

A. THE TRIAL COURT ERRONEOUSLY DENIED [DEFENDANT'S] ARGUMENT FOR A NEW TRIAL BASED ON THE SUBMISSION OF THE UNIDENTIFIED FINGERPRINT.

B. THE TRIAL COURT ERRONEOUSLY FAILED TO ADDRESS [DEFENDANT'S] ARGUMENT FOR A NEW TRIAL BASED ON INEFFECTIVE ASSISTANCE OF [PCR] COUNSEL.

IV.

Rule 3:20-1 and -2 provide a mechanism for seeking a new trial following a criminal conviction. Rule 3:20-2 permits a defendant to do so "on the ground of newly-discovered evidence" at any time. In particular, a defendant may seek a new trial where advances in scientific methodology previously unavailable would likely have changed the result. State v. Behn, 375 N.J. Super. 409, 429 (App. Div.), certif. denied, 183 N.J. 591 (2005).

A trial court's ruling on a motion for a new trial "shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1. Similarly, pursuant to Rule 3:20-1, the trial judge shall not set aside a jury verdict unless "it clearly and convincingly appears that there was a manifest denial of justice under the law." The "semantic" difference between "miscarriage of justice" and "manifest denial of justice under the law" is an "oversight and should not be construed as providing for a different standard in criminal cases at the trial level than that applicable to appellate review and to civil cases at the trial level." Pressler & Verniero, Current N.J. Court Rules, comment 2 on R. 3:20-1 (2016) (citing State v. Perez, 177 N.J. 540, 555 (2003); State v. Gaikwad, 349 N.J. Super. 62, 82 (App. Div. 2002)).

"[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown."[4] State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000); see also State v. Henries, 306 N.J. Super. 512, 529 (App. Div. 1997); State v. Conway, 193 N.J. Super. 133, 172 (App. Div.), certif. denied, 97 N.J. 650 (1984); State v. Artis, 36 N.J. 538, 541 (1962).

## V.

This matter was presented to the trial court under the rubric of a motion for a new trial pursuant to Rule 3:20-1 and -2. In furtherance of his motion defendant sought retesting of the latent fingerprint pursuant to N.J.S.A. 2A:84A-32a to -32d (the DNA retesting statute), which governs post-conviction retesting of forensic DNA evidence. We commence our discussion

---

[4] Defendant argues that our review should be de novo. We disagree. A trial court's decision regarding N.J.S.A. 2A:84A-32a is premised upon the court's judgment and discretion. See, e.g., N.J.S.A. 2A:84A-32a(d)(5) (requiring the trial court to evaluate the weight of evidence "in its discretion" and "whether or not it was introduced at trial" in relation to presumably favorable DNA testing). Thus, we discern no basis to deviate from the abuse of discretion standard on motions for a new trial — the relief sought by defendant. However, our review of a trial court's legal determinations, such as the motion judge's conclusion that N.J.S.A. 2A:84A-32a was inapplicable, is de novo. See State v. Reece, 222 N.J. 154, 167 (2015).

by addressing the statutes that govern the testing and cataloguing of DNA and fingerprint evidence.

Law enforcement is required to record fingerprints under the following circumstances:

> immediately upon the arrest of any person for an indictable offense, or for any of the grounds specified in paragraph (1), (2), (3) or (4) of subsection [(a)] of section 5 of [N.J.S.A. 2C:25-21] or of any person believed to be wanted for an indictable offense, or believed to be an habitual criminal, or within a reasonable time after the filing of a complaint by a law enforcement officer charging any person with an indictable offense, or upon the arrest of any person for shoplifting, pursuant to [N.J.S.A.] 2C:20-11, or upon the arrest of any person for prostitution, pursuant to [N.J.S.A.] 2C:34-1, or the conviction of any other person charged with a nonindictable offense, where the identity of the person charged is in question[.]
>
> [N.J.S.A. 53:1-15; see generally, N.J.S.A. 53:1-13 to -20.16.][5]

The collection, testing and cataloguing of DNA samples is governed by the DNA Database and Databank Act of 1994 (the DNA Act), N.J.S.A. 53:1-20.17 to -20.38. The DNA Act was established to enhance law enforcement's ability to detect and deter recidivism "for certain violent crimes" or acts of delinquency by juveniles which, if committed by an adult, would constitute a crime. N.J.S.A. 53:1-20.18; see also N.J.A.C.

---

[5] The fingerprinting statutes do not address DNA testing.

13:81-1.1(b) ("It is the goal of the DNA Act to assist [f]ederal, [s]tate, and local criminal justice and law enforcement agencies in the identification, detection or exclusion of individuals who are the subjects of criminal investigations or prosecution. Identification, detection and exclusion may be facilitated by the DNA analysis of biological evidence left by the perpetrator of a crime and recovered from the crime scene.").

In pertinent part, N.J.S.A. 53:1-20.20(g) states "[e]very person convicted or found not guilty by reason of insanity of a crime shall have a blood sample drawn or other biological sample collected for purposes of DNA testing." Once the DNA samples are drawn and their identification characteristics recorded, they are "stored and maintained in the State DNA databank[,]" and are also "forwarded to the [Federal Bureau of Investigation (FBI)] for inclusion in [the FBI's Combined DNA Index System]." N.J.S.A. 53:1-20.21; see also N.J.S.A. 53:1-20.19; State v. O'Hagen, 189 N.J. 140, 148-49 (2007). The record of the identification characteristics are "stored and maintained in the State DNA database . . . ." Ibid.

The procedures for the "submission, identification, analysis and storage of DNA samples and typing results of DNA samples submitted under the [DNA Act]" are regulated pursuant to

N.J.A.C. 13:81-1.1 to -7.1 (the regulations). N.J.A.C. 13:81-1.1; N.J.A.C. 13:81-1.3 ("These rules apply to the DNA samples taken from offenders for offenses covered in N.J.S.A. 53:1-20.20."). "Offender[s]" obligated to submit DNA samples in accordance with the regulations include "persons, including juveniles, who meet the criteria [set forth] in N.J.S.A. 53:1-20.20 . . . ." N.J.A.C. 13:81-1.2; N.J.A.C. 13:81-1.4(a)(8) ("The obligation to submit a DNA sample shall be imposed upon . . . [p]ersons who are convicted on or after September 22, 2003[,] of crimes . . . .").

The DNA retesting statute was enacted in 2001 and amended in 2015 without the inclusion of fingerprint testing. L. 2001, c. 377, § 1, § 3; L. 2015, c. 127, § 1, § 2, § 3. An initial draft of an Assembly bill on DNA retesting contemplated fingerprint testing in addition to DNA testing. Assembly No. A-2178 (March 6, 2000). However, the fingerprint testing language was not included in later bills introduced in both the Assembly and Senate. Senate No. S-1920 (December 4, 2000); Assembly No. A-3996 (December 6, 2001); Senate No. S-1365 (February 27, 2014); Assembly No. 1678 (pre-filed for introduction in the 2014 session). No explanation for the removal of fingerprint testing from the original bill was offered in the statements attached to the subsequent bills or the legislation enacted in L. 2001, c.

377, § 1.[6]  <u>Senate Judiciary Committee, Statement to S-1920</u> (June 28, 2001); <u>Assembly Judiciary Committee, Statement to S-1920 [First Reprint]</u> (December 13, 2001); <u>Assembly Judiciary Committee, Statement to A-3996</u> (December 13, 2001).

We have previously recognized the qualitative differences between fingerprint and DNA evidence.  <u>A.A. ex rel. B.A. v. Attorney Gen. of N.J.</u>, 384 <u>N.J. Super.</u> 67, 96-97 (App. Div. 2006), <u>aff'd</u>, 189 <u>N.J.</u> 128 (2007); <u>State v. O'Hagen</u>, 380 <u>N.J. Super.</u> 133, 146-47 (App. Div. 2006), <u>aff'd</u>, <u>supra</u>, 189 <u>N.J.</u> at 165.  Nevertheless, the DNA Act notes "a compelling parallel between the taking of DNA and fingerprinting," <u>N.J.S.A.</u> 53:1-20.18, and the regulations require the submission of fingerprints in addition to DNA by a qualifying offender, <u>N.J.A.C.</u> 13.81-2.1(c), (e), and (f).  The regulations also govern the analysis and storage of DNA samples obtained and tested pursuant to the DNA retesting statute.  <u>N.J.A.C.</u> 13:81-7.1.

Considering the legislative and regulatory commonality regarding retesting of DNA and fingerprints in conjunction with the absence of a fingerprint retesting statute, we are guided in

---

[6] We note that the original bill introduced by the Assembly was "modeled after an existing Illinois law[,]" <u>Assembly No. A-2178</u> (March 6, 2000), while the subsequent version enacted as <u>L.</u> 2001, <u>c.</u> 377, § 1 was "modeled after a recently enacted law in California."  <u>Senate No. S-1920</u> (December 4, 2000).

our analysis by application of the DNA retesting statute. <u>In re Petition of Smith</u>, 114 <u>N.J. Super.</u> 421, 433 (App. Div.) ("The absence of statutory guidance . . . necessitates a practical approach to the problem. In this respect we are guided by the actions of the Legislature in other related areas."), <u>certif. denied</u>, 59 <u>N.J.</u> 263 (1971); <u>see also</u>, <u>Groh v. Groh</u>, 439 <u>N.J. Super.</u> 186, 189-95 (Law Div. 2014) (applying divorce law to adjudicate dissolution of a civil union where the New Jersey Civil Union Act was silent on the no-fault ground of irreconcilable differences); <u>Filqueiras v. Newark Pub. Sch.</u>, 426 <u>N.J. Super.</u> 449, 468-75 (App. Div.) (applying federal Civil Rights Act where the New Jersey Civil Rights Act was silent on an issue implicating substantive due process), <u>certif. denied</u>, 212 <u>N.J.</u> 460 (2012); <u>Casey v. Brennan</u>, 344 <u>N.J. Super.</u> 83, 106 (App. Div.) (noting that "we frequently look to Delaware law for guidance or assistance" when considering corporate law issues of first impression), <u>certif. denied</u>, 170 <u>N.J.</u> 389 (2001). We are mindful that the motion judge concluded the DNA retesting statute was inapplicable. Notwithstanding, we may "affirm the trial court's decision on grounds different from those relied upon by the trial court." <u>State v. Heisler</u>, 422 <u>N.J. Super.</u> 399, 416 (App. Div. 2011).

N.J.S.A. 2A:84A-32a(a) states that "[a]ny eligible person may make a motion before the trial court that entered the judgment of conviction for the performance of forensic DNA testing." Both the DNA retesting statute and the regulations specifically contemplate the retesting of DNA recorded and retained pursuant to the DNA Act. N.J.S.A. 2A:84A-32a(k); N.J.A.C. 13:81-1.1(a).[7] "The [DNA retesting] statute applies broadly to any individual who was convicted of a crime and is currently serving a sentence." State v. Reldan, 373 N.J. Super. 396, 402 (App. Div. 2004), certif. denied, 182 N.J. 628 (2005). The motion shall not be granted unless, following a hearing, the defendant establishes the following:

> (1) the evidence to be tested is available and in a condition that would permit the DNA testing that is requested in the motion;
>
> (2) the evidence to be tested has been subject to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced or altered in any material aspect;
>
> (3) the identity of the defendant was a significant issue in the case;

---

[7] We note parenthetically that defendant is subject to the requirements of the DNA Act and the concomitant regulations because his conviction qualifies him as both a "person" and as an "offender" required to submit a DNA sample pursuant to N.J.S.A. 53:1-20.20(g), as well as N.J.A.C. 13:81-1.2, -1.3 and -1.4(a)(8).

18

(4) the eligible person has made a prima facie showing that the evidence sought to be tested is material to the issue of the eligible person's identity as the offender;

(5) the requested DNA testing result would raise a reasonable probability that if the results were favorable to the defendant, a motion for a new trial based upon newly discovered evidence would be granted. The court in its discretion may consider any evidence whether or not it was introduced at trial;

(6) the evidence sought to be tested meets either of the following conditions:

(a) it was not tested previously;
(b) it was tested previously, but the requested DNA test would provide results that are reasonably more discriminating and probative of the identity of the offender or have a reasonable probability of contradicting prior test results;

(7) the testing requested employs a method generally accepted within the relevant scientific community; and

(8) the motion is not made solely for the purpose of delay.

[N.J.S.A. 2A:84A-32a(d).]

It is defendant's burden to establish that all of the elements necessary for DNA testing have been fulfilled. See State v. Peterson, 364 N.J. Super. 387, 392-93 (App. Div. 2003) (holding that the DNA retesting statute "sets forth eight conditions a

convicted person must establish to be entitled to such testing[.]").

Here, the viability of the latent fingerprint and its availability for accepted scientific testing via AFIS and IAFIS is not at issue. See N.J.S.A. 2A:84A-32a(d)(1), (2), and (7). The State does not challenge defendant's assertions that the AFIS database has expanded since the time the latent fingerprint was tested, or that the latent fingerprint was never submitted for IAFIS testing. See N.J.S.A. 2A:84A-32a(d)(6). Nor does the State oppose defendant's application based on allegations of delay, see N.J.S.A. 2A:84A-32a(d)(8), or any other procedural infirmity, see N.J.S.A. 2A:84A-32a(a). Defendant has professed his innocence throughout the course of these proceedings. He challenged the eyewitness identifications at trial. Therefore, while the proofs at trial were substantial, defendant has made a prima facie showing that the latent fingerprint is at least material to the issue of defendant's identity as the robber. See N.J.S.A. 2A:84A-32a(d)(3) and (4).

We construe our decision to be rooted in an analysis of N.J.S.A. 2A:84A-32a(d)(5), which does not require a defendant to "prove the DNA results will be favorable, rather it must only be established that there is a reasonable probability that a new trial would be granted if the DNA results are favorable to the

defendant." <u>Reldan</u>, <u>supra</u>, 373 <u>N.J. Super.</u> at 402 (citing <u>Peterson</u>, <u>supra</u>, 364 <u>N.J. Super.</u> at 396-97). Thus, the "reasonable probability" requirement set forth in subsection (d)(5) "applies only to the grant of a new trial in the event the results of DNA testing are favorable." <u>State v. DeMarco</u>, 387 <u>N.J. Super.</u> 506, 517 (App. Div. 2006) (quoting <u>Peterson</u>, <u>supra</u>, 364 <u>N.J. Super.</u> at 396-97).

In that vein, where a new trial is sought premised on the discovery of "new" evidence, the evidence must be: (1) material to the issue and not merely cumulative, impeaching or contradictory; (2) discovered after the trial and not reasonably discoverable prior thereto; and (3) of a nature as to probably have affected the jury's verdict. <u>State v. Carter</u>, 85 <u>N.J.</u> 300, 314 (1981); <u>see also</u> <u>State v. Ways</u>, 180 <u>N.J.</u> 171, 187-93 (2004). In light of our analysis of <u>N.J.S.A.</u> 2A:84A-32a(a) and <u>N.J.S.A.</u> 2A:84A-32a(d) (excluding subsection (d)(5)), it is uncontroverted that the issue presented here regarding the latent fingerprint is "material[,]" and that given the undisputed advances in AFIS and IAFIS the results would not have been reasonably discovered prior to or during trial. <u>Ibid.</u>

Given the difficulty of anticipating the outcome of a DNA (or fingerprint) test, "the trial court should postulate whatever realistically possible test results would be most

favorable to defendant in determining whether he [or she] has established that 'favorable' DNA testing 'would raise a reasonable probability . . . a motion for a new trial . . . would be granted[.]'" DeMarco, supra, 387 N.J. Super. at 517 (quoting Peterson, supra, 364 N.J. Super. at 397 (emphasis removed)). "DNA test results that not only tended to exculpate defendant but to implicate someone else would be evidence of 'the sort that would probably change the jury's verdict if a new trial were granted.'" Peterson, supra, 364 N.J. Super. at 398-99 (quoting Carter, supra, 85 N.J. at 314).

There is a possibility that retesting the latent fingerprint could produce the fingerprint of an individual with physical characteristics similar to those of defendant, who was in the area of the robbery at the time it occurred, and who could be identified as an individual within the criminal milieu with a history of robbery or related offenses. There is no burden on defendant to demonstrate the likelihood of such a favorable result. Reldan, supra, 373 N.J. Super. at 402; Demarco, supra, 387 N.J. Super. at 517. Even were we to contemplate such a hypothetical outcome of retesting here, for the reasons stated below we conclude there is no reasonable probability that defendant could establish his entitlement to a new trial.

To be sure, in the absence of deliberate judicial review of the trial record which produced the conviction, the ease with which to conjure a favorable outcome would result in retesting in every case involving unidentified fingerprints. In <u>Reldan</u> we addressed this in the context of the DNA retesting statute by noting, "[a] defendant cannot compel the State to release the evidence for DNA testing where the evidence at trial was overwhelming and the defendant did not present a defense or alibi that would be consistent with the explanation the DNA [testing] results might supply." <u>Reldan</u>, <u>supra</u>, 373 <u>N.J. Super.</u> at 402-03 (App. Div. 2004); <u>compare</u> <u>Peterson</u>, <u>supra</u>, 364 <u>N.J. Super.</u> at 396 (holding that the strength of the State's proofs is not a relevant factor for consideration where the perpetrator's identity was at issue).

In this matter, consistent with our holding in <u>Reldan</u>, even the most favorable retesting outcome and the "vagaries" of eyewitness identification, <u>United States v. Wade</u>, 388 <u>U.S.</u> 218, 228, 87 <u>S. Ct.</u> 1926, 1933, 18 <u>L. Ed.</u> 2d 1149, 1158 (1967), <u>State v. Henderson</u>, 208 <u>N.J.</u> 208 (2011), must be weighed against the compelling proofs presented by the State. These proofs include: two reliable in-court identifications; video evidence corroborating the witnesses' testimony, authenticated by a third witness who also interacted with defendant; and a statement made

by defendant during the police investigation. Significantly, the jury was presented with testimony favorable to defendant that the latent fingerprint was not his — yet that testimony was not sufficient to produce reasonable doubt in the jurors' minds. Finally, defendant did not present a viable defense or alibi "that would be consistent with the explanation the [fingerprint retesting] results might supply." Reldan, supra, 373 N.J. Super. at 403.[8] Instead, his defense focused on purported inconsistencies in the witnesses' description of defendant's clothing. Armour I, supra, slip op. at 3.

Notwithstanding the known risk of mistaken identification, see, e.g., Wade, supra, 388 U.S. at 228, 87 S. Ct. at 1933, 18 L. Ed. 2d at 1158, Henderson, supra, 208 N.J. at 208, both the victim and Wilson provided comprehensive and detailed descriptions of defendant's appearance and behavior. The victim was an experienced nurse. She was characterized by the State at oral argument as the "ideal" witness, who provided a detailed physical description of defendant based, in part, upon her professional background. Wilson was able to identify defendant from her observations of him on the date of the incident and her

---

[8] A defendant may assert an alibi pursuant to Rule 3:12-2. Although a defendant has no obligation to assert an alibi, in the context of a claim for retesting forensic evidence, we adopt the view expressed in Reldan that the failure to assert or present an alibi defense is an appropriate consideration.

recall of his appearance when she identified him the following day. The trial judge also instructed the jury regarding cross-racial identification. See Model Jury Charge (Criminal), "Identification: In-Court and Out-of-Court Identifications" (2012); State v. Cromedy, 158 N.J. 112, 132 (1999), modified, Henderson, supra, 208 N.J. at 299. Juries are presumed to understand and follow instructions. State v. Feaster, 156 N.J. 1, 65 (1998), cert. denied, 532 U.S. 932, 121 S. Ct. 1380, 149 L. Ed. 2d 306 (2001); see also State v. Muhammad, 145 N.J. 23, 52 (1996).

In Peterson, supra, 364 N.J. Super. at 396, which we construe narrowly and limited to its facts, we held that "the strength of the evidence against a defendant is not a relevant factor in determining whether his [or her] identity as the perpetrator was a significant issue." Therefore, we held that DNA test results that not only tended to exculpate defendants but to inculpate another person would be evidence that would probably change the jury's verdict. However, in Peterson the identity of the murderer was likely (and almost certainly) the person whose DNA was found at the crime scene. See id. at 392. In Reldan, supra, 373 N.J. Super. at 404, we distinguished Peterson by noting that the evidence in Peterson "could not only exculpate the defendant, but implicate another." We also

pointed to the defendant's failure to provide an alibi, which would have been evidence that "could serve to exculpate the defendant and potentially change the jury's verdict." Ibid.

Here, similar to Reldan, even if resubmitting the latent fingerprint for further testing produced a favorable result, it would not constitute grounds for a new trial as, standing alone, it would neither exculpate defendant nor inculpate another person. The latent fingerprint at issue was not the sole evidence linking the robber to the crime. Nor was it a crucial piece of evidence, save for the original test result which was favorable to defendant. It should not be overlooked that during trial there was no argument raised by defendant about the importance of the latent fingerprint in regard to its inculpating a third party. Thus, we hold defendant has failed to satisfy both the test set forth in N.J.S.A. 2A:84A-32a(d)(5) and, by extension, the test in Carter, supra, 85 N.J. at 314.

Defendant also argues that State v. Velez, 329 N.J. Super. 128 (App. Div. 2000), decided prior to the enactment of the DNA retesting statute, furnishes a basis for retesting as well. In Velez we reversed an order denying a PCR petition and remanded for DNA testing. Id. at 136-37. We noted "the objective of the criminal justice system is the fair conviction of the guilty and the protection of the innocent. The system fails if an innocent

person is convicted." Id. at 137. By contrast here defendant sought retesting of the latent fingerprint by motion for a new trial. Accordingly, our analysis is premised on the tests promulgated in N.J.S.A. 2A:84A-32a(d) and Carter, supra, 85 N.J. at 314. Again, by application of those tests, we conclude Velez does not provide a basis for retesting.

There are no limitations on the amount of applications that may be filed under the DNA retesting statute. Nevertheless, we recognize the important public interest regarding finality and repose. See, e.g., First Union Nat. Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 352 (2007); Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521-22 (2006); Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 74 (2004); State v. Burgess, 298 N.J. Super. 254 (App. Div. 1997), aff'd, 154 N.J. 181 (1998); State v. Cupe, 289 N.J. Super. 1, 13 (App. Div.), certif. denied, 144 N.J. 589 (1996); Velasquez v. Franz, 123 N.J. 498, 505 (1991); Zaccardi v. Becker, 88 N.J. 245, 262 (1982) (Schreiber, J., concurring and dissenting); Hodgson v. Applegate, 31 N.J. 29, 43 (1959). Given the nature of the expanding pool of fingerprint entries in AFIS and IAFIS, without the requisite predicate demonstration pursuant to Carter, supra, 85 N.J. at 314 (as well as N.J.S.A. 2A:84A-32a), defendants could endlessly seek post-conviction retesting. This would occur in the absence of a

deliberative judicial analysis contemplating that evidence which resulted in conviction versus that potential evidence which defendant argues could result in a new trial. Should the judicial analysis result in a determination antithetical to a defendant's request, as here, it would promote finality and repose.

Similar to Velez, supra, 329 N.J. Super. at 137, "[w]e offer no view" as to defendant's innocence or guilt. Rather, our decision is limited to whether retesting the latent fingerprint "would raise a reasonable probability that if the results were favorable to the defendant, a motion for a new trial based upon newly discovered evidence would be granted." N.J.S.A. 2A:84A-32a(d)(5); see also Carter, supra, 85 N.J. at 314. After thoughtful attention to the trial record, including the substantial and compelling proofs presented, the exculpatory testimony involving the same latent fingerprint and no assertion by defendant of an alibi, we hold that retesting would not raise a reasonable probability that a motion for a new trial based upon newly discovered evidence would be granted.

In reaching our decision we acknowledge, as a general proposition, the difficulty of making an abstract decision regarding hypothetical test results. Pursuant to that acknowledgement, our decision is predicated upon, and limited

to, our finding that even a favorable outcome of retesting would be overshadowed by the probative evidence of defendant's guilt.

Further, it is not our intent to establish a bright-line rule where retesting of fingerprints is, or is not, required. We recognize that such a rule could produce an unfair result when, unlike here, there is a rational relationship between the request and evidence that might have played a material role in the conviction.[9]

## VI.

Finally, with respect to defendant's claim that he was provided ineffective assistance of PCR counsel relative to his motion for a new trial, we defer these claims to a PCR petition. See R. 3:22-12(a)(2) (permitting the filing of a second or subsequent PCR petition if that petition alleges the ineffective assistance of PCR counsel, subject to certain time restrictions); R. 3:22-4(b). Although defendant relies on matters in the record in making his ineffective assistance of counsel claim, there are extensive proofs outside the record, particularly as it pertains to Conley's performance and defendant's interaction with him, as well as defendant's

---

[9] In light of our decision, we conclude that no hearing pursuant to N.J.S.A. 2A:84A-32a, including testimony from Sweedo, was required.

interaction with the PFF and Buccolo.[10]  Thus, defendant's ineffective assistance claim is better suited for a PCR petition.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[10] As a corollary, although the October 7, 2013 correspondence from the Office of the Attorney General addressed to defendant identifies him as a "consumer" and claimant for restitution, it is unclear whether defendant ever qualified as a recipient or whether any restitution was received.

A-2006-14T1