**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1574-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LAWRENCE C. PHILSON,
a/k/a LAWRENCE C. OLIVER,

    Defendant-Appellant.

_____

Argued June 6, 2022 – Decided July 18, 2022

Before Judges Messano and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 00-01-0228.

Sebastian M. Bio argued the cause for appellant (Bio & Laracca, PC, attorneys; Sebastian M. Bio, on the briefs).

Emily M.M. Pirro, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Emily M.M. Pirro, of counsel and on the brief).

PER CURIAM

Defendant Lawrence Philson appeals from the January 12, 2021 order denying his motion for a new trial based on newly discovered evidence. We summarize the relevant facts from our prior opinion affirming defendant's convictions on direct appeal:

> Rajul Thomas was a drug dealer. When he arrived home in the evening of September 28, 1999, two men with guns confronted him. The men were later identified as defendant and his co-defendant, Clinton Martin. . . . The intruders took Thomas into the living room where they demanded money.
>
> Thomas told the men where to find between $7000 and $8000 he kept in his closet. . . . They tied Thomas up[] and told him to call someone to get more money. Thomas called two people, his friend . . . and his sister, Shearon Hollaway.
>
> With the men still in his house, Thomas's fiancée, Teisha Evans, returned home with their children. While pointing a gun at her, defendant grabbed Evans by her throat, took her chain, and threw her to the floor. . . After Evans begged defendant and Martin not to kill her and her children, she was taken into the living room with the children; they were placed on their stomachs[] and covered with coats and clothing. Evans remained on the floor until the police arrived.
>
> Meanwhile, defendant and Martin continued to demand money from Thomas, striking him with the gun. They threatened him with his, Evans's and the children's death unless he came up with more money.

A-1574-20

. . . .

The men then forcibly took Thomas from his house; he was made to lie down in the back seat of a black Lexus. They drove to Thomas's sister's house. . . . At about that time, East Orange Police Officer Felix Torres drove by in a marked police cruiser. As he did, defendant, who had been driving the Lexus, changed places with Martin, who had been in the back of the car. As another police car approached, Martin, now driving, "gunned" the car, driving in reverse to get away, causing Torres to swerve to avoid it. As Martin drove, Thomas rolled out of the car.

. . . .

. . . During the subsequent car chase, defendant, sitting in the back seat of the Lexus, leaned out the window and, holding the gun with two hands, fired at Torres.

. . . .

When the Lexus struck a fence and came to a stop, the two men ran from the car. Torres . . . radioed a description of the men and the direction of their flight . . . while other officers searched the area.

Martin was found in possession of a .380 caliber automatic handgun, several decks of heroin, and $2626 in cash. Another police officer found defendant[]hiding in the bushes. Defendant had his right hand under his body and when he rolled over, the officer found a plastic bag containing $14,886 in cash, jewelry that had been taken from Evans and Thomas earlier that evening, and glassine packages containing cocaine and heroin. Several feet from where defendant was located, the officer found a .9 mm automatic

3

handgun, as well as rounds and magazines, all wrapped in a t-shirt. . . . The next morning, a .45 caliber automatic handgun with a live round in the magazine was found in a nearby driveway, with spent shell casings nearby.

. . . The only person to identify defendant was Torres.

Defendant, who was tried without Martin, testified at trial. He admitted he was present in Thomas's Lexus, but he denied he participated in the crimes. He said Martin, a former "associate" of his from a 1996 incarceration, told him he was going to see a friend about some money and defendant, with nothing else to do, went along for the ride. He testified Martin gave him a .45 caliber automatic handgun to hold for him, but he denied entering Thomas's apartment or firing the weapon during the police chase. According to defendant, Thomas was not "stressed" when he came out of his home with Martin, but defendant could not "comment" on whether Thomas was forced at gunpoint to lay down in the car.

Defendant testified that "two guys" approached the Lexus and fired shots, causing Martin to drive off. According to defendant, while the police were in pursuit, he ducked down and threw the gun he had been holding over the front seat to Martin. When the car stopped, at Martin's request he grabbed a black bag when he ran from the car. He knew the bag contained money, but he did not know it contained drugs or jewelry.

[State v. Philson, No. A-6501-01 (App. Div. Nov. 10, 2004) (slip op. at 5–12)].

The jury convicted defendant of numerous crimes, including first-degree kidnapping, first-degree armed robbery, and first-degree carjacking; the judge sentenced defendant to an aggregate term of sixty years' imprisonment with a fifty-one-year period of parole ineligibility. Id. at 1–3.

On May 23, 2019, defendant filed a motion for a new trial — the subject of this latest appeal. In support, defendant furnished a 2018 certification[1] from Martin, who pled guilty before defendant's trial, and partial transcripts from proceedings involving Martin.

In the certification, Martin, who was no longer incarcerated, stated he first implicated defendant during a plea hearing on February 23, 2001, but, during a May 11, 2001 case management conference, Martin told his attorney he would not "testify for the prosecutor." Martin said he "was then offered a better recommendation if [he] decided to testify for the prosecutor and if not, the offer would remain the same if [he] didn't testify." Martin certified he only implicated defendant "to get a lower plea offer," "leading [him] to give testimony against [defendant] that was untrue." Martin stated that defendant "did not have any part in crimes that were committed at Rajul's house," and, if defendant's counsel

---

[1] The certification is dated July 9, 2018, but defendant claims this was a typo and the correct date is July 9, 2019.

A-1574-20

had contacted him, Martin "would have testified in court to the chain of events that caused [defendant] to be wrongly implicated in this case."

The transcript from September 29, 2000, demonstrates Martin pled guilty and agreed to testify truthfully against defendant; in return, the State agreed to recommend a fifteen-year sentence with an eighty-five-percent period of parole ineligibility. Martin eventually provided a factual basis implicating himself and defendant in some of the crimes alleged. Nonetheless, the prosecutor deemed the factual basis unacceptable and withdrew the plea offer.

We were only supplied with one page of the February 23, 2001 transcript, at which Martin claimed he pled guilty and implicated defendant. That page only reveals the State agreed to strike the same plea bargain with Martin that it offered him in September 2000.

On May 11, 2001, Martin, who was in federal custody at the time and had already pled guilty, appeared ostensibly for sentencing. Defendant had yet to be tried. The prosecutor agreed that if Martin testified against defendant in accordance with his guilty plea, or defendant pled guilty and Martin was not required to testify, the State would recommend a twelve-year term instead of a fifteen-year term. Martin waived his right to be present at sentencing in the future.

A-1574-20

Defendant's trial began with opening statements on March 21, 2002. The State never called Martin as a witness.

The PCR judge, who was also the trial judge and the judge who accepted Martin's guilty plea, appropriately set out the standard enunciated in State v. Carter, 85 N.J. 300, 314 (1981), in considering a motion for a new trial. The judge noted defendant's reliance on the May 11, 2001 transcript was misplaced, because Martin "did not recant any testimony" against defendant. Instead, the proceeding's "primary purpose" was to present the State's "conditional recommendation of a reduced sentence in return for Martin's agreement, if called by the State, to testify . . . and to present Martin's waiver of his right to appear for sentencing." The judge concluded the transcript "was discoverable by reasonable diligence before [defendant's] trial" and was "of little or no probative value upon any issue raised in the motion."

Although Martin's certification "appear[ed] to be newly discovered," the judge noted its contents, too, could have been discovered with reasonable diligence before trial. The judge said Martin certified he would have told defendant's counsel of his false accusations of defendant's guilt, and his willingness to testify, had counsel asked. More importantly, the judge determined "[t]he hypothesis of Martin's recantation testimony is dubious,"

noting the improbability that Martin's certification partially exonerating defendant would be believed. The judge also cited the strength of the State's case against defendant, and the fact that Martin's inculpatory statements about defendant at the time of his guilty plea were never presented to the jury at defendant's trial, and so had no bearing on the jury's verdict. The judge entered an order denying the motion for new trial, and this appeal followed.

Before us, relying again on Martin's certification and partial transcripts of court proceedings involving Martin, defendant argues he is entitled to a new trial. Defendant also contends the State committed a Brady[2] violation by withholding Martin's statements at the May 11, 2001 hearing. Defendant alternatively asserts we should remand for the court to conduct an evidentiary hearing on these claims.

The State contends there was no Brady violation. It also argues defendant's asserted significance of the transcripts from Martin's hearings is pure speculation, the transcripts were easily discoverable through the exercise of reasonable diligence, and Martin's certification, alone or combined with

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

defendant's other "newly discovered evidence," fails to meet the standards for granting a new trial. We agree and affirm.

The Court recently reiterated the standard applicable to a motion for a new trial based on newly discovered evidence:

> [T]he movant seeking a new trial based on newly discovered evidence must demonstrate that the evidence is, indeed, newly discovered; a new trial is warranted only if the evidence is "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted."
>
> [State v. Szemple, 247 N.J. 82, 99 (2021) (quoting State v. Nash, 212 N.J. 518, 549 (2013)).]

As the Court said in State v. Ways, "all three prongs of that test must be satisfied before a defendant will gain the relief of a new trial." 180 N.J. 171, 187 (2004) (citing Carter, 85 N.J. at 314). "We review a motion for a new trial decision for an abuse of discretion." State v. Fortin, 464 N.J. Super. 193, 216 (App. Div. 2020), certif. denied, 246 N.J. 50 (2021) (citing State v. Armour, 446 N.J. Super. 295, 306 (App. Div. 2016)).

"In order to establish a Brady violation, the defendant must show: (1) the prosecution suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material." State v. Martini, 160 N.J. 248, 268–69 (1999)

(citing Moore v. Illinois, 408 U.S. 786, 794–95 (1972)). To meet the third prong, a court must determine whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." State v. Marshall, 148 N.J. 89, 156 (1997) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

As we understand defendant's argument, he claims the May 11, 2001 transcript purportedly demonstrates Martin refused to inculpate defendant until the prosecutor lowered his sentence recommendation in return for Martin's commitment to testify against defendant. Defendant contends this lends strong support to Martin's certification that he only implicated defendant to garner a better plea bargain.

There is no evidence that the State suppressed transcripts of the proceedings or otherwise withheld exculpatory information from defendant. Martin does not exculpate defendant in any of the transcripts in the appellate record.[3] In short, defendant's claim of a Brady violation is meritless and deserves no further discussion. R. 2:11-3(e)(2).

---

[3] Although the prosecutor rejected Martin's factual basis for his guilty plea during the September 29, 2000 proceeding, the transcript demonstrates Martin said under oath that defendant accompanied him to Thomas's home, was armed, and pulled a gun on Thomas. Martin acknowledged defendant was "firing in the direction of the police officer's car."

We also agree with the PCR judge that transcripts from Martin's proceedings are not newly discovered evidence and could have been secured through the exercise of reasonable diligence before defendant's trial. Reduced to its essence, defendant's new trial motion rests solely on Martin's certification.

To meet the third prong of the Carter standard for a new trial, a defendant must demonstrate the newly discovered evidence "shake[s] the very foundation of the State's case and almost certainly [would] alter the earlier jury verdict." Ways, 180 N.J. at 189. "Courts generally regard recantation testimony as suspect and untrustworthy [and c]onsequently, the burden of proof rests on those presenting such testimony to establish that is it probably true and the trial testimony probably false." State v. Carter, 69 N.J. 420, 427 (1976) (first citing 58 Am. Jur. 2d New Trial § 175, p. 391; and then citing State v. Baldwin, 47 N.J. 379, 400 (1996)). As already noted, Martin never testified at trial, therefore, the certification is an atypical recantation. More importantly, nothing in the transcripts provided support the proposition that Martin's certification is true and whatever he said in the past was false. The certification does not undermine the jury's verdict.

To the extent we have not addressed defendant's remaining arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12