**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4015-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHARLES E. LUCAS,

    Defendant-Appellant.

_____

Argued November 27, 2017 — Decided July 9, 2018

Before Judges Accurso, O'Connor and Vernoia.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Indictment
No. 15-07-0808.

Vincent J. Sanzone, Jr. argued the cause for
appellant.

Nancy A. Hulett, Assistant Prosecutor,
argued the cause for respondent (Andrew C.
Carey, Middlesex County Prosecutor,
attorney; Nancy A. Hulett, of counsel and on
the brief).

PER CURIAM

A jury convicted defendant Charles E. Lucas of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(7). The court imposed a fifteen-year term of imprisonment, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Defendant appeals from his conviction, raising the following points for our consideration:

> POINT I: THE TRIAL COURT COMMITTED REVERSAL [SIC] ERROR BY ALLOWING THE STATE TO CONVICT THE DEFENDANT ON A NON-EXISTENT LAW AND INSTRUCTING THE JURY WITH ERRONEOUS CHARGES.
>
> POINT II: THE TRIAL COURT ERRED IN NOT GRANTING A NEW TRIAL.
>
> POINT III: THE PROSECUTOR'S COMMENTS DURING HER SUMMATION WERE PREJUDICIAL AND DENIED DEFENDANT A FAIR TRIAL.

Having considered these arguments in light of the record and applicable legal standards, we affirm defendant's conviction.

I

N.J.S.A. 2C:14-2(a)(7) provides that one is guilty of aggravated sexual assault if he commits an act of sexual penetration with another who he knew or should have known was, among other things, physically helpless. N.J.S.A. 2C:14-1(g) defines "physically helpless" as a condition in which a person is unconscious or is physically unable to flee or is physically unable to communicate an unwillingness to act.

2

In this matter the State's theory throughout trial was defendant committed an act of aggravated sexual assault upon K.H.[1] because he penetrated her when she was in a state of intoxication that rendered her physically helpless. The salient evidence is as follows.

K.H. testified that she and her friends went to a club one evening to celebrate her birthday. Her friends included N.H., who was defendant's girlfriend, and F.H. K.H., N.H., and F.H. gathered at N.H.'s apartment before going to the club. According to K.H., they all had three or four drinks before leaving for the club.

K.H, N.H., and F.H. arrived at the club at approximately 11:00 p.m. N.G., one of K.H.'s friends, joined the group at 12:30 a.m. While at the club, the group ate and had mixed drinks. K.H. testified her drinks were mixed with vodka. She stopped counting the number of drinks she had at the club after her fourth or fifth drink, although she subsequently testified she had only three drinks.

After leaving the club for the evening, K.H. returned to N.H.'s apartment by getting a ride from one of her friends, but testified she had no recollection of how she got there because

---

[1] We use initials to maintain the confidentiality of those involved.

A-4015-15T2

she was "too drunk." She did recall that, after arriving at N.H.'s apartment, F.H. and N.H. woke her up and, when they opened the car door, K.H. almost fell out onto the ground. K.H. required her friends' assistance to get out of the car and go up a set of stairs to N.H.'s apartment.

K.H. testified she has some recollection that, after she was in the apartment, her friends tried to wake her up because they wanted her to have some birthday cake. She also recalled waking up at one point because she felt someone kiss her lips. She pushed the person away and turned to lie on her arms. Otherwise, she could not remember what occurred in the apartment because she was "extremely drunk", and "couldn't function, couldn't stand up. Couldn't do anything for myself or by myself."

K.H. testified she woke up the next morning to defendant and N.H. arguing. K.H. noticed she was wearing the dress she had on the night before, but was not wearing any underwear. N.H. left the apartment briefly to retrieve medicine from her car and, in her absence, defendant told K.H. he had sex with her but did not want N.H. to know. K.H. testified she had no recollection of having sex with defendant because she was "passed out drunk on the couch."

4

Later that morning, K.H. reported the incident to the police. She was transported to a rape crisis center, where she was physically examined by a nurse and specimens were taken from her mouth and vagina. When the police notified defendant they were looking for him, he turned himself in voluntarily. Analyses of the specimens taken from K.H.'s vagina and a buccal swab taken from defendant revealed the presence of defendant's sperm in K.H.'s vagina.

F.H. testified that when she, K.H., and N.H. were still in N.H.'s apartment before leaving for the club, they each had one drink. While at the club, F.H. noticed K.H. have three drinks and, at 12:45 a.m., kept K.H. from having another because K.H. was "off balance" and "stumbling a little bit" when she danced. Toward the end of the night, K.H.'s friends made K.H. sit down because she continued to stumble. According to F.H., K.H. left the club at about 1:45. She required a friend to hold each arm to get her from the club to the car. K.H. was placed into the backseat of the car, where she fell asleep. When they arrived at N.H.'s apartment, K.H. was unable to balance herself when she stepped out of the car. With someone holding each arm, K.H. was able to climb the steps to N.H.'s apartment, where K.H. fell asleep on a couch in the living room.

5

F.H. testified that, at one point, her friends tried to rouse K.H. to have cake, but K.H. was "out of it" and wanted to sleep. Subsequently, between 2:20 a.m. and 2:45 a.m., K.H. needed the assistance of two of her friends to use the bathroom. K.H. then went back to sleep. F.H. left the apartment between 3:30 and 4:00 a.m.

N.G. testified she observed K.H. drinking at the club and by the end of the evening was "extremely intoxicated" and "incoherent. . . . [W]e were like slapping her face" and telling K.H. to "wake up, wake up." At 2:00 a.m., they all left the club. At that time, K.H. needed to be held up by others because she could barely walk or stand on her own, and just "fell into the car." N.G. drove separately to N.H.'s apartment. When N.G. arrived at the apartment, K.H. was asleep on the couch. Thereafter, when N.G. and the others tried to wake K.H. to have cake, K.H. was "barely coherent."

N.G. spent the night on the floor next to the couch where K.H. slept. Around 6:00 a.m., N.G. was awakened by a "pushing" against her foot. She looked over at the couch and it appeared defendant was having sex with someone on the couch who appeared to be asleep. N.G. told defendant to stop. Eventually he did so and went into N.H.'s bedroom. At that point, N.G. realized the person on the couch was K.H.

6

N.G. testified K.H. was motionless. Her face was down, her dress pulled up, and her bare buttocks exposed and in the air. N.G. pulled K.H.'s dress over her buttocks and positioned her on her back on the couch. K.H. continued to be motionless. N.H. came out of her bedroom and N.G. told her what she observed. N.G. then left the apartment.

As previously stated, the jury found defendant guilty of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(7). This appeal ensued.

II

A

Defendant's first contention is the trial court erred by allowing him to be convicted of a crime that does not exist.

Five days before trial, the State obtained an indictment that superseded the previous one. The original indictment contained only one count, which charged defendant with aggravated sexual assault, N.J.S.A. 2C:14-2(a)(7). The first count of the superseding indictment similarly charged defendant with violating N.J.S.A. 2C:14-2(a)(7). The superseding indictment also added three new counts. Because defendant did not have sufficient time to prepare a defense against the three new counts before trial, the court severed those counts and the trial proceeded on count one only.

7

Count one of the superseding indictment states in pertinent part:

> [Defendant] . . . did commit an act of sexual penetration upon K.H. . . . and K.H. was one who [defendant] knew or should have known was physically helpless[,] rendering K.H. temporarily incapable of understanding the nature of her conduct including but not limited to being incapable of providing consent[,] contrary to the provisions of N.J.S.A. 2C:14-2a(7).

N.J.S.A. 2C:14-2(a)(7) states:

> a. An actor is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances:
>
> > . . . .
>
> > (7) The victim is one whom the actor knew or should have known was physically helpless <u>or incapacitated, intellectually or mentally incapacitated, or had a mental disease or defect</u> which rendered the victim temporarily or permanently incapable of understanding the nature of his conduct, including, but not limited to, being incapable of providing consent.
>
> [emphasis added.]

Defendant did not object to the first count in the superseding indictment when before the trial court. He argues the language in the indictment conflicts with that in N.J.S.A. 2C:14-2(a)(7) because it omitted the language highlighted in the

8

statute cited above but, more important, defendant contends the indictment did not charge him with a valid offense.

The fact the indictment did not include the language highlighted in the statute cited above is of no moment. Defendant was not charged with penetrating K.H. when he knew or should have known she was "incapacitated, intellectually or mentally incapacitated, or had a mental disease or defect." More important, there is no indication defendant was charged with a non-existent crime. He was charged with penetrating K.H. while she was "physically helpless," an act expressly prohibited by N.J.S.A. 2C:14-2(a)(7). There is no question the first count of the superseding indictment charged defendant with a valid offense.

Defendant argues the court erred by failing to grant his motion to arrest judgment, see Rule 3:21-9, on the ground he was convicted of a "non-existent law." As just noted, the crime with which defendant was indicted and ultimately convicted is one that is expressly set forth in N.J.S.A. 2C:14-2(a)(7).

In addition, the motion was filed months after the verdict was rendered and, for that matter, after defendant filed his notice of appeal. The trial court correctly denied the motion on the ground it was untimely; the motion was not filed within ten days of the verdict, as mandated by Rule 3:21-9. Further,

the trial court no longer had jurisdiction because a notice of appeal had been filed, see Rule 2:9-1(a).  We discern no basis to disturb the court's ruling on this motion.

In his brief, defendant maintained the jury instructions were erroneous for various reasons.  At oral argument before us, defendant retracted all but one argument about the quality of the instructions.  That argument is as follows.

The indictment was read to the jury during the charge and it suggested a physically helpless person was one who was "incapable of understanding the nature of his conduct, including, but not limited to, being incapable of providing consent."  The jury was subsequently instructed, consistent with N.J.S.A. 2C:14-1(g), that the definition of "physically helpless" is one who is "unconscious or physically unable to flee or is physically unable to communicate unwillingness to act[.]"  Defendant asserts the inconsistency between the language in the indictment and the charge misled the jury.

We note that, after reading the indictment to the jury, the court advised the jury the statute governing the subject offense "provides in pertinent part, an actor is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person whom the actor knew or should have known was physically helpless."  The court further instructed that, to

10

convict defendant of such offense, the State had to prove certain elements beyond a reasonable doubt. The court went through each element and, as to the subject one, charged:

> The . . . State must prove to you beyond a reasonable doubt . . . that at the time of the penetration [K.H.] was physically helpless. Physically helpless means that condition in which a person is unconscious or is physically unable to flee or is physically unable to communicate an unwillingness to act.

Given the manner in which the court's instructions to the jury unfolded, we cannot agree the language in the indictment had the capacity to confuse or mislead the jury. The court identified what the indictment stated, but then immediately enlightened the jury of what the State was required to prove. The jury was instructed the State had to prove beyond a reasonable doubt that at the time of the penetration [K.H.] was physically helpless and defined "physically helpless" consistent with the definition of this term in N.J.S.A. 2C:14-1(g).

We have carefully considered the remaining contentions in defendant's first argument point, and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

11

Defendant next argues the trial court erred when it denied his motion for a new trial on the basis of newly discovered evidence. "[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." State v. Armour, 446 N.J. Super. 295, 306 (App. Div.) (quoting State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000)), certif. denied, 228 N.J. 239 (2016).

It is well-settled that newly discovered evidence will warrant a new trial only if the evidence is: "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if the new trial were granted." State v. Carter, 85 N.J. 300, 314 (1981). Our Supreme Court has held that all three prongs of the test must be met before a defendant will be entitled to a new trial. Carter, 85 N.J. at 314; State v. Artis, 36 N.J. 538, 541 (1962).

The alleged newly discovered evidence were three certifications. One was signed by K.H.'s estranged husband (husband). Among other things, he claimed that, before the subject incident, K.H. informed him she had been raped by

others.  Defendant argued these prior allegations were false and, thus, he was entitled to a new trial so he could admit evidence K.H. had falsely accused others in the past of sexual assault.

The second certification was signed by the husband's brother (brother).  In addition to other allegations, the brother stated he contacted the Division of Child Protection and Permanency (Division) to report K.H. was abusing her children. When K.H. discovered what the brother had disclosed to the Division, she retaliated by making her fifteen-year-old daughter falsely accuse the brother of sexually molesting her.

The third certification was from N.H.  Among other things, she claimed K.H. told her that she had falsely accused her half-brother of molesting K.H.'s daughter.

The court rejected the motion.  The court noted the certifications contained hearsay and other flaws, and some of the evidence was discoverable before trial.  More important, the court determined whether K.H. falsely accused others of sexual assault was irrelevant because her credibility in this matter was immaterial.  The court pointed out the evidence supporting K.H.'s allegation that defendant sexually assaulted her while she was physically helpless was primarily based upon evidence

13

other than K.H.'s testimony, especially N.G.'s testimony.  The

court noted

> Basically, [K.H.] had no memory of what
> happened.  She wasn't the one who took the
> witness stand to say that the -- she has a
> memory of the defendant having sex with her
> on the night of this incident.
>
> [N.G.] testified that she witnessed the
> defendant sexually assaulting the victim who
> was completely unresponsive during and after
> the sexual assault. . . .  Afterwards,
> [N.G.] got up to, once the defendant left
> the room, to talk to the victim and the
> victim was not moving.  The victim's dress
> was up practically above her head.  She was
> naked and she didn't — the victim did
> nothing to pull the dress down. When the
> [N.G.] pulled it down the victim still
> didn't move.  She turned the victim over and
> the victim still didn't move.
>
> So it was [N.G.] who was the eyewitness, the
> one who gave the details and had a
> recollection and saw what occurred, not the
> victim getting on the stand to say what the
> defendant had done to her.  In fact, the
> victim's memory was limited to waking up at
> one point with someone . . . touching her
> lips.  She remembered trying to push him
> away and that's it.
>
> It wasn't until after the fact when the
> friend told her what happened that she had
> some awareness, but not based on her own
> recollection.  So that's why I say that
> evidence of the victim's untruthfulness or
> history of making false allegations of
> sexual assault would not be material
> evidence in this case, because it wouldn't
> counter the victim's recollection. . . .

14

> [I]t was not the victim who had the ability to testify as to what the defendant actually did to her, because she was too intoxicated to know. . . .
>
> [T]here was overwhelming proof of the victim's intoxication and unresponsive state coming from the . . . testimony of others, in particular the friend sleeping on the floor. So undermining the victim's credibility would not be material to the issues of evidence in the case.

For the reasons provided by the trial court, we agree defendant failed to fulfill the three elements in <u>Carter</u>. There is no basis to order a new trial.

### C.

Defendant's final contention is the prosecutor made prejudicial remarks during her summation. These alleged prejudicial remarks were that the prosecutor (1) expressed a personal belief K.H. was credible; (2) stated N.G. provided "damning" evidence; (3) characterized K.H. as the "perfect prey" when she was on the couch, suggesting defendant was an animal; and (4) asked the jurors to consider what it was like for K.H. to testify about the incident.

During defense counsel's summation, she attacked K.H.'s credibility, arguing she had a selective memory. Defense counsel also insinuated the sexual act was consensual.

15

While prosecutors are entitled to zealously argue the merits of the State's case, they occupy a special position in our system of criminal justice. <u>State v. Smith</u>, 212 N.J. 365, 403 (2012). "[A] prosecutor must refrain from improper methods that result in a wrongful conviction, and is obligated to use legitimate means to bring about a just conviction." <u>State v. Daniels</u>, 182 N.J. 80, 96 (2004) (quoting <u>State v. Smith</u>, 167 N.J. 158, 177 (2001)).

However, even if the prosecutor exceeds the bounds of proper conduct, "[a] finding of prosecutorial misconduct does not end a reviewing court's inquiry because, in order to justify reversal, the misconduct must have been 'so egregious that it deprived the defendant of a fair trial.'" <u>Smith</u>, 167 N.J. at 181 (quoting <u>State v. Frost</u>, 158 N.J. 76, 83 (1999)). "Our task is to consider the 'fair import' of the State's summation in its entirety." <u>State v. Jackson</u>, 211 N.J. 394, 409 (2012) (quoting <u>State v. Wakefield</u>, 190 N.J. 397, 457 (2007) (additional citations omitted).

We recognize asking the jurors to place themselves in the shoes of the victim has been soundly discouraged by other courts that have considered the tactic. <u>See, e.g.</u>, <u>Tyree v. United States</u>, 942 A.2d 629, 643 (D.C. 2008). However, having reviewed the record, we are satisfied the prosecutor's request that the

16

jurors consider how K.H. felt while testifying did not deprive defendant of a fair trial. The remark was fleeting and the prosecutor did not return to this theme. We also do not find the prosecutor's comment K.H. was the "perfect prey" an attempt to portray defendant as an animal, but rather was fair comment on and made in response to defense counsel's characterization of the evidence. None of the prosecutor's comments at issue provide any basis to overturn the verdict.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17