# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1027-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

B.A.,

    Defendant-Appellant.

_____

> Argued June 7, 2022 – Decided June 28, 2022
>
> Before Judges Currier and Smith.
>
> On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 13-08-2454.
>
> B.A., appellant, argued the cause pro se.
>
> Jason Magid, Assistant Prosecutor, argued the cause for respondent (Grace C. MacAulay, Camden County Prosecutor, attorney; Jason Magid, of counsel and on the brief).

PER CURIAM

    Defendant B.A. was convicted in 2016 of third-degree stalking and sentenced to five years' probation conditioned upon 364 days incarceration in

the county jail. The sentencing court imposed a stalking restraining order upon defendant as well. Defendant moved for a new trial immediately before sentencing, but the trial court denied it. We then affirmed on direct appeal. State v B.A., 458 N.J. Super. 391 (App. Div. 2019). Defendant now appeals from the trial court's denial of his second new trial motion. He alleges, for the first time, that the sentencing court erred by violating his constitutional due process rights, and by "disregarding" certain "new" evidence that defendant claims is exculpatory. We reject defendant's arguments on appeal and affirm.

We incorporate the factual history from our opinion on direct appeal affirming defendant's conviction and sentence, id. at 398-403, and we summarize the relevant facts and procedural history.

Defendant and the victim (J.R.), were in a romantic relationship which began when J.R. retained defendant to do some independent contract work for her consulting firm. After a few months, the romantic relationship cooled, and J.R. ended it. The business relationship continued for several weeks until that, too, soured. J.R. terminated defendant as an independent contractor and issued him cease and desist letters to ward off defendant's unwanted contact with her business clients. Defendant in turn sued J.R. for what he claimed were unpaid fees.

Defendant then began to join professional groups J.R. belonged to and attend various business networking events J.R. was slated to attend. Not only did defendant pop up unannounced in those settings, he also appeared at events where J.R. was the scheduled speaker, causing her alarm and concern. Defendant also entered J.R.'s social media space, following her on Twitter. Upon discovering this, she blocked him. Next, defendant produced a concerning number of what he claimed were "parody" videos, lampooning J.R.'s business and personal life.[1] The videos, which defendant admitted creating, were posted on YouTube[2], accessible to the public, and digitally tagged to J.R., which meant she received a Google alert to the postings whenever they occurred. The videos contained disturbing themes and images. Examples included: defendant suggesting that "he was the subject of false accusations which could 'trigger an emotional response'"; a movie clip of a woman being strangled; and at least one video where defendant pretended to eat her pet dog. J.R. eventually closed her business and sought professional counseling as a result of defendant's conduct.

---

[1] Evidence produced at trial revealed that defendant posted 176 videos to at least two public sites over a four-month period.

[2] Evidence produced at trial showed that defendant posted the videos on YouTube as well as another website called MonkeyCom.

A-1027-20

At trial, defendant was convicted of third-degree stalking. Defendant moved for a second new trial in January 2020. Following a delay due in part to the COVID-19 pandemic, the trial court heard the second motion for a new trial on October 4, 2020.

After argument on the motion, the court made findings, noting first that while defendant claimed to have newly discovered evidence which showed that he did not post disparaging videos about J.R., and that the State and the victim conspired to conceal evidence from him, he never produced such "new" evidence. The court found that the two certifications defendant presented to support his motion included his own hearsay certification and an unsigned certification from a "witness." The court concluded that defendant presented nothing during the motion hearing that could not have been adduced at trial. As to the defendant's main point, that he did not tag J.R. in his videos, the court noted there "was substantial evidence from which the jury could have concluded beyond a reasonable doubt that [defendant] did tag her with his postings . . . ." The court cited defendant's own trial testimony where he admitted to posting the videos. The court also noted that both defendant and the victim were tech-savvy businesspeople who were quite familiar with the internet. The court also found that, given defendant's technological awareness, it was "improbable" that

defendant could post the offending videos "and not know and intend that she would be aware of them and see them . . . ."

Beyond the "tagging" dispute, the court found that the evidence of defendant's guilt on the stalking charge was "overwhelming," citing defendant's threatening phone call to J.R., his multiple appearances at business networking events where J.R. was appearing or speaking, and the existence of thousands of files on his computer containing files with J.R.'s name and links to various "revenge" websites.  Finally, the court noted that defendant represented himself at trial, presented multiple witnesses in his case, personally cross-examined the victim, and testified.

The court denied the application, finding that defendant failed to show the "new" evidence was not discoverable before trial, and further finding defendant failed to establish that the "new" evidence was of a nature which would change the jury's verdict if a new trial was granted.

The court rejected defendant's allegation that the State committed a Brady[3] violation, finding that the discovery defendant contended had been withheld was actually the subject of several motions by defendant prior to trial.  The court noted that it had previously found the State preserved and disclosed all relevant

---

[3]  Brady v. Maryland, 373 U.S. 83 (1963).

A-1027-20

evidence.  Nonetheless, the court proceeded to find that if such <u>Brady</u> material actually existed, defendant failed to show how he had been prejudiced, or how such material would have changed the trial outcome.  Defendant appealed.

"A trial court's ruling on a motion for a new trial 'shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law.'"  <u>State v. Armour</u>, 446 N.J. Super. 295, 305 (App. Div. 2016) (quoting <u>R.</u> 2:10-1).  "[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse [of discretion] has been shown."  <u>Id.</u> at 306 (first alteration in original) (quoting <u>State v. Russo</u>, 333 N.J. Super. 119, 137 (App. Div. 2000)).

<u>Rule</u> 3:20-1 states: "The trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice."  "[P]ursuant to <u>Rule</u> 3:20-1, the trial judge shall not set aside a jury verdict unless 'it clearly and convincingly appears that there was a manifest denial of justice under the law.'"  <u>Armour</u>, 446 N.J. Super. at 305-06.

In <u>State v. Carter</u>, the Court established a three-pronged test for the grant of a new trial due to the discovery of new evidence:

> [T]o qualify as newly discovered evidence entitling a party to a new trial, the new evidence must be[:] (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the

6

trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted.

[85 N.J. 300, 314 (1981).]

"To sustain a motion for a new trial the proffered evidence must meet all three aspects of the test." State v. Artis, 36 N.J. 538, 541 (1962) (citing State v. Johnson, 34 N.J. 212, 223 (1961)). In State v. Ways, the Supreme Court defined "material" evidence under the Carter test, stating: "Material evidence is any evidence that would 'have some bearing on the claims being advanced'" by the defense. 180 N.J. 171, 188 (2004) (quoting State v. Henries, 306 N.J. Super. 512, 531 (App. Div. 1997)).

Defendant's main argument is that the trial court somehow disregarded his proffer of "new" evidence. We disagree. The record shows that defendant never produced the supposed new evidence despite having multiple opportunities before and during trial. Nor did defendant present any new evidence in support of his motion for a new trial. The record also shows that the trial court carefully considered defendant's certifications and found their contents revealed nothing that could not have been proffered at trial with reasonable due diligence. Even so, the trial court considered the general descriptions of defendant's "new" evidence and found that had such evidence been produced, it would have been "merely cumulative, impeaching, or contradictory" evidence, not rising to the level of materiality required

A-1027-20

under <u>Carter</u>. 85 N.J. at 314. The trial court found defendant offered no new proofs which would have changed the outcome. Consequently, we find no abuse of discretion.

Turning to defendant's argument for a new trial based on his contention that the State committed a <u>Brady</u> violation; we find it has no merit. Defendant's assertion of this issue was previously rejected by the trial court. Therefore, the court properly exercised its discretion in rejecting the claim.

Finally, defendant raised a constitutional due process claim on appeal, alleging that the restraining order violated his constitutional right to confront J.R., his accuser. We have no obligation to address this argument on appeal where it was not raised before the trial court. <u>Zaman v. Felton</u>, 219 N.J. 199, 226-27 (2014). For completeness, we note that the due process argument is undermined by the trial record. Defendant extensively cross-examined J.R. at trial. Therefore, he was not denied any due process right.

Any remaining arguments by defendant not addressed here lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1027-20