**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1318-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

COREY CAUTHEN, a/k/a
JAMES MARROW,

     Defendant-Appellant.

_____

        Submitted January 27, 2026 – Decided February 24, 2026

        Before Judges Sumners and Susswein.

        On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 09-01-0006.

        Corey Cauthen, self-represented appellant.

        Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Julie Serfess, Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury found defendant Corey Cauthen guilty of first-degree attempted murder, second-degree aggravated assault, fourth-degree aggravated assault by pointing a firearm, second-degree possession of a weapon for an unlawful purpose, and second-degree possession of a weapon without a carry permit. Defendant's offenses occurred when he and his co-defendant Asmar Bease shot Alphonse Gee in a parking lot. Defendant was sentenced to an aggregate term of fifty years. We denied defendant's direct appeal. State v. Cauthen, No. A-0591-12 (App. Div. June 9, 2014), certif. denied, 220 N.J. 100 (2014) (Cauthen I).

On October 16, 2016, defendant filed a post-conviction relief (PCR) petition alleging ineffective assistance of trial counsel, which was denied without an evidentiary hearing. On appeal, we affirmed in part and reversed in part and remanded for the PCR court to conduct an evidentiary hearing regarding defendant's alibi defense claim. State v. Cauthen, No. A-2789-16 (App. Div. Apr. 27, 2018) (slip op. at 6) (Cauthen II). On remand, the PCR court denied defendant's PCR petition following an evidentiary hearing. We affirmed the court's order. State v. Cauthen, No. A-1472-19 (App. Div. Apr. 27, 2021) (slip op. at 2) (Cauthen III), certif. denied, 251 N.J. 459 (2022).

A-1318-23

On July 1, 2022, defendant filed an amended second PCR petition.[1] The PCR court subsequently issued an order and written opinion denying his petition.

Defendant appeals, arguing:

> POINT ONE
>
> THIS COURT SHOULD REMAND THIS MATTER BACK TO THE PCR COURT FOR A FRESH EVIDENTIARY HEARING INTO DEFENDANT'S CLAIMS THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL DURING HIS TRIAL AND FIRST PCR PETITION.
>
> A. Trial Counsel
>
> B. First PCR Counsel

After reviewing the parties' arguments, the record, and the governing legal principles, we affirm.

## I.

We incorporate herein the facts set forth in <u>Cauthen I</u> (slip op. at 3-7). Because of the parties' familiarity, we limit our recitation of the facts and procedural history to the issues raised in this appeal.

---

[1] Defendant claims his amended second PCR petition was filed on May 9, 2022; however, the PCR court noted his petition was filed on July 1, 2022.

A-1318-23

On August 1, 2008 around 3:30 a.m., Gee went looking for his wife after she did not return home. (Cauthen I, slip op. at 3). After finding her having sex with Bease in the back of her car, he "snatched" her out of the car, hit her, and dropped her off with her brother at a nearby restaurant. Gee then went looking for and found Bease. Before confronting Bease, defendant then "came out of nowhere." Gee recognized the "tall dark[-]skinned " defendant with dreadlocks as someone who regularly hung out with Bease. As Gee approached the men, he saw them pull out guns and immediately returned to his vehicle and tried to leave. Defendant and Bease shot at Gee as he tried to start his car, hitting his collarbone and neck.

Before Gee was taken away in an ambulance, he told a City of Paterson police officer that "Asmar Bease and a tall dark[-]skinned male with dreadlocks" shot him after "I caught [Bease] having sex with my wife." At the hospital, Gee, who was paralyzed from the neck down, reiterated this information to Paterson Police Lieutenant Richard Reyes. After Lieutenant Reyes returned to the hospital with photographs, Gee identified defendant in a photograph as the other assailant with Bease.

On October 16, 2016, defendant filed a PCR petition alleging trial counsel failed to have his then-girlfriend Tanicia Thompson testify at trial as an alibi

witness. He certified that he arrived at her Paterson apartment on the evening of August 1, 2008, spent the night, and did not leave until the next day. Although he didn't state the exact time, he was "positive that there was . . . daylight" when he left. Thompson certified that defendant arrived at her apartment on the evening of August 1 and left the following morning when "there was . . . daylight." Defendant certified that he informed trial counsel of his alibi, but trial counsel failed to interview or call Thompson as a witness at trial.

At oral argument, the PCR court asked defendant's PCR counsel whether he had the "opportunity to check the jail log . . . [for] visits by defense counsel to [defendant] while he was at the jail." PCR counsel responded that he did not review the jail logs because the "issue isn't necessarily how many times [defendant and trial counsel] met, because by his own admission they had more than one discussion, they've had more than one meeting," but "[t]he focus is what was the substance of those conversations" between defendant and his trial counsel.

On January 27, 2017, the PCR court denied defendant's petition without an evidentiary hearing. The court dismissed defendant's argument that his trial counsel was ineffective in failing to call Thompson as a witness at trial, reasoning that counsel made a "strategic decision" to not call Thompson because

5

it was undisputed that she "was unable to provide specific facts and details about what the time the [d]efendant . . . arrived and/or left [her] residence during the [police] interview."  Defendant appealed.

On April 27, 2018, we affirmed in part and reversed in part and remanded for the PCR court to conduct an evidentiary hearing regarding defendant's alibi defense claim.  Cauthen II, slip op. at 6.  On remand, the PCR court conducted an evidentiary hearing to assess defendant's claim that trial counsel failed to present alibi testimony from Thompson.  Defendant and trial counsel testified.

Trial counsel stated he interviewed Thompson at least two times over the phone.  The first time, "she didn't remember exactly when [defendant] got [to her apartment], despite what she told the police, and didn't remember exactly what time he left her apartment the morning of the shooting."  The second time, he spoke with Thompson and her friend who did her hair on the night before the shooting.  The friend "also did not corroborate []Thompson's account in any way."  Trial counsel also said he interviewed Delilah Bailey,[2] who stated that defendant arrived at Thompson's apartment "sometime between 7:00 and 9:00 in the morning" of August 1.  However, Thompson " was unable to tell me when

---

[2] The record is unclear as to Bailey's relationship with defendant or Thompson.

A-1318-23

[defendant] arrived at her apartment and when he left." Based on his pretrial investigation, trial counsel testified that:

> [Thompson] was not a credible alibi witness and I was concerned that by calling her, I would not only allow the State to very easily discredit her, but . . . would harm [defendant] potentially by possibly causing his statement to become an issue, which the State had decided it wasn't going to use, possibly opening the door to very, very damning information and-statements that were contained in that statement. That would . . . have inflamed the jury against [defendant], and I wanted to avoid that at all costs.

Trial counsel expressed his concern that presenting the alibi testimony could encourage the State to admit defendant's statements to the police that were "rife with inflammatory material, [and] irrelevant material." He explained that putting Thompson on the stand would "open[] the door to all that information, and it would be extremely, extremely harmful to [defendant]" because it involved defendant's admissions that he was a gang member, had sold drugs, and faced past criminal charges.

Trial counsel also testified that he discussed his concerns about his alibi defense with defendant prior to jury selection. He could not recall "where the . . . conversations took place," but believed "it was more likely than not at the county jail" where he "spoke to [defendant] at least once," during defendant's pretrial detention.

A-1318-23

Defendant testified that trial counsel never discussed the alibi defense with him, never visited him at the jail, nor discussed trial strategy. Defendant later admitted that he met with trial counsel "in the beginning" and discussed the alibi defense but noted "that was the first and only time he ever came to see me after prison." He also explained that when he asked trial counsel at trial why Thompson, Bailey, and others were not alibi witnesses, he was told "they're not a good look, we're not going to call them."

Defendant also acknowledged submitting a certification in support of Bease, confessing he shot Gee not Bease, and stated that he signed the certification "[b]ecause th[at] is what actually happened." When asked if his "testimony today that [the certification was] the truth," defendant answered "[y]es." When asked whether he shot Gee, defendant answered "yes." The State also presented defendant with his PCR certification stating that he was at Thompson's house all night. However, defendant then stated at the hearing that the shooting happened two to three minutes after he left Thompson's house and that he shot Gee thereafter.

As to defendant's bemusing testimony, the PCR court remarked:

> I must say I was quite surprised by [defendant's] testimony, because I was aware of his two separate certifications a year apart. In one he cast[s] blame on his [counsel] for not investigating an alibi witness, and

A-1318-23

the other he said he was the sole shooter. Two utterly contradictory concepts, and yet, [defendant] today is saying, no both statements were true. He seems not to appreciate the . . . factual conflict which exists between those two.

The court noted that it was "[q]uite perplexing" that defendant argued this alibi claim but held that he "fail[ed] on both counts of Strickland.[3]"

On December 5, 2018, the PCR court issued an order and written decision denying the petition. The court determined that trial counsel was "utterly credible in all important respects" and defendant was not "credible at all." In applying the Strickland test, the court found there was no proof that trial counsel's representation was ineffective and that he could have done something that reasonably would have altered the trial outcome.

On July 1, 2022, defendant filed a second amended PCR petition regarding the representation he received from PCR counsel and appellate counsel. He alleged PCR counsel was ineffective in failing: (1) to argue that the trial court failed to ensure that defendant was aware of and had the opportunity to review, evaluate, and accept his plea offer, (2) to argue that his trial counsel failed to ensure that defendant was aware of his maximum sentence exposure, and (3) to

---

[3] Strickland v. Washington, 466 U.S. 668, 687, 694 (1984), sets forth a two-prong test a defendant must satisfy in a PCR claim. The test will be discussed below.

9

obtain prison visitation logs to show that his trial counsel did not confer with him before trial. He also alleged appellate counsel was ineffective for failing to appeal his case to our Supreme Court.

On June 22, 2023, the PCR court issued an order denying defendant's PCR petition without an evidentiary hearing. The court set forth its reasoning in a thirteen-page written decision on May 9 that defendant's arguments were either procedurally barred by Rule 3:22-4 or failed on its merits in not setting forth a prima facie case of ineffective assistance of trial counsel. The court noted that although Rule 3:22-4 has an exception for a defendant alleging ineffective assistance of PCR counsel, "a closer look proves that these issues were adjudicated on the merits previously and/or should have been raised instead on direct appeal." Lastly, the court rejected defendant's ineffective assistance of appellate counsel argument, noting that "[a]ppellate counsel is protected in making strategic decisions in which issues to raise on appeal and does not need to raise every issue that defendant requests."

Defendant's appeal followed.

II.

A.

10

We review a PCR court's legal conclusions de novo. State v. Harris, 181 N.J. 391, 419 (2004); see State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020) (noting that when a PCR court does not conduct an evidentiary hearing, this court "review[s] its legal and factual determinations de novo"). Appellate courts evaluate a PCR court's order denying ineffective assistance of counsel under the two-pronged Strickland standard. State v. Gaither, 396 N.J. Super. 508, 513-14 (App. Div. 2007). Under the two-part test, the defendant must demonstrate that "counsel's performance was deficient," that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment," and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694; accord State v. Fritz, 105 N.J. 42, 58 (1987).

PCR "is neither a substitute for direct appeal, R. 3:22-4, nor an opportunity to relitigate cases already decided on the merits, R. 3:22-5." State v. Preciose, 129 N.J. 451, 459 (1992).

Under Rule 3:22-4(b), a second or subsequent PCR petition must be dismissed unless it falls within the applicable time limit under Rule 3:22-12(a)(2) and it alleges on its face one of the three available grounds for relief.

11

Rule 3:22-12(a)(2) instructs us that second and subsequent PCR petitions cannot be filed a year later than the latest of:

> (A) the date on which the constitutional right asserted was initially recognized by the United States Supreme Court or the Supreme Court of New Jersey, if that right has been newly recognized by either of those Courts and made retroactive by either of those Courts to cases on collateral review; or
>
> (B) the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or
>
> (C) the date of the denial of the first or subsequent application for post-conviction relief where ineffective assistance of counsel that represented the defendant on the first or subsequent application for post-conviction relief is being alleged.

Under Rule 3:22-4(b)(2)(A), a permissible ground for relief on a second or subsequent PCR petition must allege:

> that the petition relies on a new rule of constitutional law, made retroactive to defendant's petition by the United States Supreme Court or the Supreme Court of New Jersey, that was unavailable during the pendency of any prior proceedings . . . .

Moreover, a court reviewing a PCR petition based on claims of ineffective assistance has the discretion to grant an evidentiary hearing only if a defendant establishes a prima facie showing in support of the requested relief. Preciose,

A-1318-23

129 N.J. at 462. Raising a PCR claim does not entitle a defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). "To establish . . . a prima facie case, the defendant must demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits." State v. Marshall, 148 NJ. 89, 158 (1997). When determining whether to grant an evidentiary hearing, the PCR court must consider the facts in the light most favorable to the defendant to determine if a defendant has established a prima facie claim. Preciose, 129 N.J. at 462-63. The court should only conduct a hearing if there are disputed issues as to material facts regarding entitlement to PCR that cannot be resolved based on the existing record. State v. Porter, 216 N.J. 343, 354 (2013).

The right to effective assistance of counsel also extends to PCR counsel. See State v. Rue, 175 N.J. 1, 18-19 (2002). PCR counsel must "advance all of the legitimate arguments requested by the defendant that the record will support," R. 3:22-6(d), and "make the best available arguments in support of them," Rue, 175 N.J. at 19. As such, "PCR counsel must communicate with the client, investigate the claims urged by the client, and determine whether there are additional claims that should be brought forward." State v. Webster, 187 N.J. 254, 257 (2006) (citing Rue, 175 N.J. at 18-19).

A-1318-23

Ineffective assistance of PCR counsel claims are governed by a different standard than ineffective assistance of trial or direct-appeal counsel claims. "[PCR] relief is not predicated upon a finding of ineffective assistance of counsel under the relevant constitutional standard . . . [as] Rule 3:22-6(d) imposes an independent standard of professional conduct upon an attorney representing a defendant in a PCR proceeding." State v. Hicks, 411 N.J. Super. 370, 376 (App. Div. 2010) (internal citations omitted). As our Supreme Court noted:

> [C]ounsel should advance all of the legitimate arguments that the record will support. If after investigation counsel can formulate no fair legal argument in support of a particular claim raised by defendant, no argument need be made on that point. Stated differently, the brief must advance the arguments that can be made in support of the petition and include defendant's remaining claims, either by listing them or incorporating them by reference so that the judge may consider them.
>
> [Webster, 187 N.J. at 257.]

The remedy for counsel's failure to meet the requirements imposed by Rule 3:22-6(d) is to hold a new PCR proceeding. Hicks, 411 N.J. Super. at 376 (citing Rue, 175 N.J. at 4). Like ineffective assistance of trial counsel claims, resolution of ineffective assistance of PCR counsel claims typically involve

14

matters outside the record.  See State v. Armour, 446 N.J. Super. 295, 317 (App. Div. 2016).

## B.

Defendant's second PCR petition is clearly time barred.  He filed his second PCR petition on July 1, 2022, almost four years after the denial of his first petition on December 5, 2018, without proof of "excusable neglect" or that enforcing "the time bar would result in a fundamental injustice."  R. 3:22-12(a)(1)(A); see State v. Brewster, 429 N.J. Super. 387, 398-400 (App. Div. 2013).  Furthermore, defendant's pending petition for certification of the first PCR petition did not toll the time for him to file the second PCR petition.  See State v. Dillard, 208 N.J. Super. 722, 727 (App. Div. 1986) (noting that the time to file a PCR petition isn't stayed or tolled by appellate or other review proceedings); see also State v. Dugan, 289 N.J. Super. 15, 19 (App. Div. 1996) (same).

## C.

We also conclude that defendant's argument that his trial counsel failed to discuss trial strategy with him is procedurally barred by Rules 3:22-4 and 3:22-5.  Defendant does not rely "on a new rule of constitutional law" that applies retroactively, nor does he allege a factual predicate that could not have been

15

discovered earlier through reasonable diligence under <u>Rule</u> 3:22-4. <u>Rule</u> 3:22-5 further bars defendant's argument. The PCR court dismissed this argument in defendant's first PCR petition and, following our remand, conducted an evidentiary hearing on trial counsel's decision not to call alibi witnesses and the frequency of his contacts with defendant.

Aside from the procedural bars of <u>Rules</u> 3:22-4 and 3:22-5, defendant's ineffective assistance claims lack merit. Defendant fails to explain how his trial counsel's failure to meet with him regarding trial strategy was prejudicial and created a reasonable probability that the jury would have reached a different verdict. <u>See</u> <u>Strickland</u>, 466 U.S. at 687, 694. We have no reason to doubt the PCR court's credibility assessment of trial counsel's testimony. He made a strategic decision not to call Thompson as an alibi witness because she could not remember when defendant left her apartment; her credibility could be easily attacked by the State, which would open the door for the State to admit defendant's inflammatory statements concerning his past charges and gang involvement. Trial counsel also testified that he communicated these concerns to defendant prior to jury selection[4] and explained during trial that he would not

---

[4] Defendant disputes that trial counsel communicated these concerns prior to jury selection. Even if trial counsel did not communicate his trial strategy regarding alibi witnesses to defendant prior to trial, defendant fails to show how

present Thompson and Bailey as witnesses because they would not be good witnesses.

We also conclude defendant's argument that his PCR counsel was ineffective in failing to obtain prison log record is procedurally barred by Rule 3:22-5 because the rule precludes re-litigation of an issue that has already been raised. Even if not procedurally barred, defendant's claim fails on the merits.

Pursuant to Rule 3:22-6(d), PCR counsel "should advance any grounds insisted upon by defendant notwithstanding that counsel deems them without merit." To meet this standard, PCR counsel "must communicate with his client and investigate the claims" and "then must 'fashion the most effective arguments possible.'" Rue, 175 N.J. at 18-19 (omitting internal citations). PCR counsel complied with the rule. At PCR argument in 2016, he explained that obtaining prison log records was unnecessary because the issue was not about the number of times trial counsel conferred with defendant but what they discussed. To that end, PCR counsel "fashioned the most effective arguments possible" by focusing on how the substance of trial counsel's strategy was deficient regarding his failure to call alibi witnesses, advising defendant not to testify, and other issues.

---

this error was prejudicial and would have altered the outcome of trial proceedings. Strickland, 466 U.S. at 687, 694.

Ibid. (omitting internal citations). Defendant's submission of prison log records does not change this conclusion, since he only attached a portion of his prison log records—one from May 9, 2022, with the others undated—and the record shows that trial counsel met with him at least once "in the beginning" and before jury selection. As a result, the PCR court properly denied defendant's ineffective assistance claims against PCR counsel.

### D.

Given that we have considered the facts in the light most favorable to defendant and concluded that he has not set forth a prima facie case in support of the requested relief, an evidentiary hearing is not warranted. Preciose, 129 N.J. at 462-63.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

m.c. Hanley

Clerk of the Appellate Division

A-1318-23